**The AMERICAN INSTITUTE OF ARCHITECTS, Appellant,**

v.

**INTERSTATE FIRE & CASUALTY COMPANY.**

**No. 91–7167.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 25, 1992.

Decided March 16, 1993.

Richard Danzig, with whom Franklin G. Snyder and Irwin Goldbloom, Washington, DC, were on the brief, for appellant.

Kelly A. Saunders, Washington, DC, for appellee.

Before EDWARDS, RUTH BADER GINSBURG and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Circuit Judge WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

The American Institute of Architects is a professional association of architects. Under an insurance policy issued by Interstate Fire & Casualty, the Institute was required, when it became "aware of any fact, circumstance or situation which may subsequently give rise to a claim", to give Interstate notice "as soon as practicable". In a diversity action brought by the AIA on the Interstate policy for expenses involved in responding to an inquiry by the Department of Justice, the district court found that the AIA had failed to supply timely notice. The court accordingly granted summary judgment in favor of Interstate. Reviewing the issue *de novo* pursuant to Illinois law, we reverse.

From March 1984 to March 15, 1986, Interstate insured the Institute against legal liability under an "Association Professional Liability Insurance Policy". Interstate terminated coverage effective March 15, 1986, but under the policy it remained

liable for one year in the absence of replacement insurance. The AIA secured insurance with CNA Insurance Company, effective March 15, 1986, but its coverage did not encompass prior acts.

On February 7, 1986, the Institute received a letter from the Antitrust Division of the Department of Justice following up a 1972 consent decree between it and the Department barring the AIA from restricting price competition among architects. The letter demanded documents relating to salaries, fees and compensation of architects. The AIA promptly retained counsel to assist with the Department's requests.

The AIA did not immediately notify Interstate. On June 26, 1986 it wrote to CNA asking for reimbursement of the expenses it had then incurred responding to the DOJ inquiry. CNA rejected the request on the ground that its policy did not cover prior acts. On July 16, 1986, the AIA wrote to Interstate, giving notice and asking for reimbursement.

Interstate responded on December 10, 1986, after prompting from the AIA's counsel, refusing coverage. Among Interstate's several reasons was its assertion that "[n]othing in the letter request from the Department of Justice suggests that either claims are being made or that wrongful acts have occurred." The Interstate response also invoked the policy's notice provisions, saying that if the AIA thought that the Department's letter "was a claim, it had a duty to properly forward this to Interstate."

The AIA requested reimbursement from Interstate on several later occasions, telling Interstate of new developments in the proceeding. It wrote twice after the AIA's officers received grand jury subpoenas in November 1987, and again when the Department said in December 1989 that it would proceed with a civil antitrust suit against the Institute. Interstate's responses continued to deny that there was any "claim" against the Institute within the meaning of the policy, as well as asserting additional defenses. In 1990 the AIA settled the suit, agreeing to a new consent decree and paying a $50,000 fine.

Before final disposition of the Department of Justice inquiry, the Institute sued Interstate for reimbursement under the policy. On cross-motions for summary judgment the district court rejected several of Interstate's defenses but granted judgment in its favor for want of proper notice. The court read a decision of the intermediate appellate Illinois court as holding that a six-month period of unexcused delay was unreasonable as a matter of law, *Illinois Valley Minerals Corp. v. Royal–Globe Ins. Co.*, 70 Ill.App.3d 296, 26 Ill.Dec. 629, 630, 388 N.E.2d 253, 254 (1979), and, viewing the current case as an unexcused five-month delay and thus materially indistinguishable, concluded that Illinois law barred coverage.

■ The parties agree that Illinois law governs. Under that law the reasonableness of an insured's delay in giving notice is a question of law where, as here, the raw facts are undisputed. *Illinois Valley Minerals*, 26 Ill.Dec. at 630, 388 N.E.2d at 254; *INA Insurance Co. v. City of Chicago*, 62 Ill.App.3d 80, 19 Ill.Dec. 519, 521, 379 N.E.2d 34, 36 (1978). As neither party suggests that the federal classification of the issue (to the extent that it differs from Illinois's) should supplant Illinois's classification, compare *Byrd v. Blue Ridge Rural Elec. Coop.*, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958), we review the decision *de novo*, as would an Illinois appellate court.

■ The policy required the Institute to give Interstate notice "as soon as practicable" of "any fact, circumstance or situation" that could give rise to a claim. Although "as soon as practicable" might be thought to demand more than mere reasonableness, Illinois courts have interpreted it to mean only that the insured must give notice of potential liability within a reasonable time. *Illinois Valley Minerals Corp.*, 26 Ill.Dec. at 631, 388 N.E.2d at 255; *Simmon v. Iowa Mutual Casualty Co.*, 3 Ill.2d 318, 121 N.E.2d 509, 511 (1954); *Casualty Indemnity Exchange v. Village of Crete*, 731 F.2d 457 (7th Cir.1984). Among the factors that may affect whether delay was reasonable are prejudice to the insurer,

*United States Fidelity & Guaranty Co. v. Maren Engineering Corp.*, 82 Ill.App.3d 894, 38 Ill.Dec. 277, 280, 403 N.E.2d 508, 511 (1980), excuses for the insured, *Illinois Valley Minerals*, 26 Ill.Dec. at 631, 388 N.E.2d at 255, and the length of the delay, *Casualty Indemnity Exchange*, 731 F.2d at 459.

Appellant argues that lack of prejudice is a critical part of the reasonableness test under Illinois law and asks the court to follow the "modern trend" of excusing any delay in the absence of prejudice. Appellant's Brief at 14 (citing Robert E. Keeton & Alan I. Widiss, *Insurance Law: A Guide to Fundamental Principles, Legal Doctrines, and Commercial Practices*, § 7, at 761 (1988)). It is not our place, however, to break new ground for the Illinois courts. *Tidler v. Eli Lilly & Co.*, 851 F.2d 418, 424 (D.C.Cir.1988). Although lack of prejudice is a factor, Illinois courts do not now treat it as automatically rendering notice reasonable, regardless of the delay. *United States Fidelity*, 38 Ill.Dec. at 280, 403 N.E.2d at 511; *Illinois Valley Minerals*, 26 Ill.Dec. at 631, 388 N.E.2d at 255.

The cases are clear that prejudice without any offsetting excuse weighs heavily towards a finding of unreasonable delay. Less clear is the impact of *absence* of prejudice when there is little or no excuse. At least one case states that when an insured "fail[s] to comply with a prompt notice requirement, the insurer may deny liability, regardless of whether it has been prejudiced by the delay." *INA Insurance Co. of Illinois v. City of Chicago*, 62 Ill.App.3d 80, 19 Ill.Dec. 519, 522, 379 N.E.2d 34, 37 (1978). On its face the assertion appears circular, for if the insured literally "fails to comply", i.e., has failed to provide notice that is reasonable under all the circumstances, the policy by its terms bars recovery. If taken as a broader statement, *INA* seems contradicted by the array of Illinois cases that list prejudice as a legitimate consideration. Its outcome may be explained in part by the length of delay (17 and 18 months for two separate accidents), and in part by the court's dismay at the insured city's inability to determine even whether it had secured an extension of the policy (a prerequisite of coverage in the period of the accidents). *Id.* 19 Ill.Dec. at 523, 379 N.E.2d at 38. Furthermore, were *INA*'s broad statement in fact the rule, it would mean—in the absence of a rather complex burden-shifting rule—that prejudice could be introduced only to help the insurer's case. In fact, other cases identify "*lack* of prejudice" as a normally relevant factor, *Simmon*, 121 N.E.2d at 511 (emphasis added), and thus one that may affirmatively help the insured's cause.

Interstate relies heavily here, as did the district court, on the finding in *Illinois Valley Minerals* that a six-month unexcused delay was unreasonable. While we agree that there is little difference between delays of five and six months, the delay here is relatively short in the perspective of Illinois insurance notice cases. With the exception of *Illinois Valley Minerals* and *Charter Oak Fire Insurance Co. v. Snyder*, 22 Ill.App.3d 350, 317 N.E.2d 307 (1974) (four-month delay), the cases in which unexcused delays have been held unreasonable as a matter of law appear all to have involved substantially longer periods. See, e.g., *Casualty Indemnity Exchange*, 731 F.2d at 459 (listing examples from Illinois cases). On the other hand, Illinois courts have considered periods of up to ten months unexcused delay to be reasonable. *Kenworthy v. Bituminous Casualty Corp.*, 28 Ill.App.3d 546, 328 N.E.2d 588 (1975).

Besides, *Illinois Valley Minerals* and *Charter Oak* are easily distinguishable. Both involved violent accidents which were sure to be more difficult to investigate four or six months after they occurred, and the *Valley Minerals* court explicitly mentioned that the insurer was thereby "prevented from making a prompt and thorough investigation". 26 Ill.Dec. at 633, 388 N.E.2d at 257. Here there is no evidence that the delay impeded any possible Interstate investigation. Most major developments occurred after notification, and the insurer was kept abreast of these by the AIA's repeated requests for coverage. Indeed, of the total legal bill of over $2,000,000, only

about $137,000 had been incurred at the time of notice. Interstate does not dispute that the AIA's legal strategy and attorneys' fees were reasonable.

The present case also differs from *Illinois Valley Minerals* and *Charter Oak* in the non-obvious character of the claim against the Institute. In *Valley Minerals* the insured had received notice that the claimant would seek damages against it, and in *Charter Oak* a claim had been filed in court. Here, the AIA informed Interstate before any actual claim had been filed. The absence of any formal claim is not dispositive, of course, as the policy calls for notice upon occurrence of any "fact, circumstance or situation which may subsequently give rise to a claim". Nonetheless, it renders the delay more reasonable.

A closely related point is that the unusual character of the AIA–DOJ dispute gave rise to some uncertainty about coverage. Indeed, Interstate's own statement of undisputed facts says that the AIA's insurance broker believed there was no coverable claim because "no pecuniary demand was made, nor was a suit filed or Court Order entered." Joint Appendix ("J.A.") at 127. While the AIA evidently came to believe that it had an insurable claim about three months after the DOJ's initial inquiry—as shown by its request for coverage from CNA—uncertainty, for at least some of the initial delay, is a mitigating fact. Further, as Interstate was liable only if the Institute's new coverage was not, the 20 days delay between its request to CNA for reimbursement and its notice to Interstate is understandable if not altogether justifiable.

In discussing the Institute's delay, Interstate persistently refers to a March 25, 1986 letter from the AIA to CNA as notice to CNA of the Department of Justice claim, and seems to regard it as proof that all later delay was manifestly unreasonable. In fact the letter was no more than a clarification of the AIA's earlier response to a question on a CNA insurance application form, asking whether it had "received any Inquiry, Complaint, Notice of Hearing from any State or Federal Regulatory Au-

thority" within the past five years. See J.A. 41, 45. This obviously called for reference to the DOJ inquiry, regardless of uncertainty as to whether the inquiry was a claim or harbinger of a claim, so we do not regard the Institute's letter as condemning its delay thereafter.

In summary, we read Illinois law as treating lack of prejudice as highly relevant, and Interstate has suggested no prejudice. Further, the Institute's delay was not altogether unexcused in light of (1) the unusual nature of the Department letter and uncertainty as to its classification as the precursor of a claim and (2) the reasons for the Institute's seeking relief first from CNA. Under these circumstances the delay was not long in the context of Illinois cases, and on all the facts we find that it was not unreasonable under Illinois law. Accordingly, we reverse the district court's summary judgment, and remand for further proceedings.

*So ordered.*