Jean **SPEARS**, Plaintiff,

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY**, Defendant.

No. CIV.A.00–2108(EGS).

United States District Court, District of Columbia.

March 30, 2003.

---

Mark Gibson Westerfield, Esquire, Johnston & Westerfield, P.C., Washington.

Daniel Karp, Esquire, Allen, Johnson, Alexander & Karp, Baltimore, MD.

## MEMORANDUM OPINION AND ORDER

SULLIVAN, District Judge.

In this action, plaintiff, Ms. Jean Spears, seeks to recover a $ 1,278,000 judgment against Intrados International Management ("Intrados") from its insurer, Nationwide Mutual Insurance Company ("Nationwide"). The judgment issued in a D.C. Superior Court tort action arising from an auto accident in which Ms. Spears was injured while working as an independent contractor for Intrados in the Ukraine. *See Spears v. Intrados*, Case No. 98CA5864 ("Superior Court case"). At the

time of the accident, Intrados was insured under a business owners' insurance policy by Nationwide Insurance. As part of a settlement agreement reached in the Superior Court case, Intrados assigned its right of action against Nationwide for coverage under the policy to Ms. Spears in order to enable her to recover the judgment entered against Intrados from Nationwide. The Complaint filed in this case alleges a single count of breach of insurance contract, premised on Nationwide's failure to satisfy the judgment against Intrados pursuant to the business owners' insurance policy.

Currently pending before the Court are the parties' cross-motions for summary judgment. Because the Court finds that there exist genuine issues of material fact precluding entry of judgment for either party at this time, the motions for summary judgment are hereby **DENIED.**

## I. BACKGROUND

The following facts are undisputed. On October 26, 1989, G.H. Wilmington, Inc., DBA, F. Ghadar Associates, DBA Intrados International Management Group, applied to defendant, Nationwide Mutual Insurance Company ("Nationwide") for insurance coverage. Def.'s Mot. Summ. J. Ex. 1. Nationwide, through its independent agent Jesse Evans, issued a business owner's policy, identified as policy # 52 BO 133 746, to Intrados. Def.'s April 1, 2002 Statement of Material Facts ("Def.'s Stat.") at 1; Def.'s Mot. Summ. J. Ex. 2; Pl.'s Stat. Material Facts ("Pl.'s Statement") ¶ 77. The policy was renewed each subsequent year, and was in effect from October 26, 1994 to October 25, 1995. Def.'s Stat. at 1. Additionally, "Intrados carried workers' compensation insurance through Nationwide." Pl.'s Stat. at ¶ 64; Def.'s Stat. Ex. 19.

Plaintiff Jean Spears, a U.S. citizen and resident of Long Island, N.Y., was employed by Intrados, an international management consulting agency, as an independent contractor from at least June 1995 to October 1995. Pl.'s Stat. ¶¶ 7, 8; Def.'s Stat. at 2; 1999 Spears. Dep. at 18–20. In the Summer of 1995, Ms. Spears traveled to the Ukraine as one of two leaders of a team performing an Intrados contract with USAID to promote capital markets in emerging Eastern European nations. Pl.'s Statement ¶¶ 1, 2; Def.'s Stat. at 2.

On August 4, 1995, while she and other Intrados independent contractors were returning from a meeting in the Ukraine related to the USAID/Intrados contract, Ms. Spears was injured in an automobile accident. Pl.'s Stat. ¶ 5, Def.'s Stat at 2. The driver of the car in which Ms. Spears was traveling ran a red light and struck another vehicle. Pl.'s Stat. ¶ 5, Def.'s Stat at 2. Ms. Spears' head hit the car's dashboard, and she sustained injuries to her eye, chest, neck, and knees. Def.'s Stat. at 2; Pl.'s Stat. ¶ 44. She was initially treated for these injuries at the U.S. Embassy in Kiev. Def.'s Stat. at 2; Pl.'s Stat. ¶ 44. 1999 Spears Dep. at 40–41, 46–47. The next day, she was transported to a hospital in London, England, seen by an eye specialist, and treated for three to four days. Def.'s Stat. at 2; Pl.'s Stat. ¶¶ 44–45. Upon her return to the United States, Ms. Spears received further treatment for visual problems and pain in her left eye. Def.'s Stat. at 2; 1999 Spears Dep. at 51–58.

On the day of the accident, Ms. Spears contacted Margaret Ghadar, Intrados Vice-Chairperson, to notify her that she had been injured and would be transported to London for further treatment. Pl.'s Stat. ¶ 44; Def.'s Stat. at 2. The costs of Ms. Spears' transport to London were covered under an insurance policy issued to

Intrados by MEDEX specifically to cover medical evacuation costs. Pl.'s Stat. ¶¶ 44–45. Upon her return to the U.S., Ms. Spears was told by Intrados that her medical costs and lost wages would be covered under an insurance policy issued by CIGNA, Intrados' insurance carrier for claims arising under the Defense Base Act ("DBA").[1] Pl.'s Stat. ¶ 48; Def.'s Stat. at 2. Accordingly, after she was contacted by a CIGNA adjuster, Ms. Spears filed a "Report of Injury or Occupational Illness" claim form on August 15, 1995. CIGNA approved the claim and reimbursed Ms. Spears' for medical costs and lost wages over the next three years. Pl.'s Stat. ¶¶ 48, 50; Def.'s Stat. at 2–3. Plaintiff maintains that during the three year period following the accident, during which her medical bills and lost wages were covered by CIGNA pursuant to Intrados' DBA policy, she never asserted any claim against Intrados, nor did she say or do anything which would have alerted Intrados or CIGNA to the possibility that she might assert such a claim. Pl.'s Stat. ¶ 51.

From this point forward, the parties' versions of events begin to diverge, with material consequences. Defendant contends that "Intrados never at any point supplied notice of the August 4, 1995 accident to ... Nationwide until March 3, 1999, over three and a half years after the occurrence." Def.'s Stat. at 3. However, there is some evidence that a representative of Intrados did attempt to notify the Nationwide agent who sold the policies to Intrados at some point "soon after" the accident, and was told that Ms. Spears' claims should be handled either as a worker's compensation case or a Defense Base Act case, and not through the Nationwide policies. Schmidt Aff. ¶¶ 6, 11; Pl.'s Stat. ¶¶ 63, 74–75, 78, 80–81. Nationwide claims to have no record of this conversation. Pl.'s Stat. ¶ 76, 82; see Def.'s Stat. at 3, 8. Because Ms. Spears' injuries were sustained overseas, the claims were eventually handled through CIGNA pursuant to the DBA policy. Pl.'s Stat. at ¶ 65.

It is undisputed that on August 3, 1998, on the advice of counsel consulted for the purpose of ascertaining her rights with respect to compensation for permanent injuries arising from the August 1995 automobile accident, Ms. Spears filed suit against Intrados in the District of Columbia Superior Court. Pl.'s Stat. ¶ 57; Def.'s Stat. at 3, *Spears v. Intrados,* 98CA5846 ("Superior Court case"). CIGNA provided Intrados with a defense in that case, in accordance with its obligations under the DBA policy. Pl.'s Stat. ¶¶ 59, 61. Upon denial of CIGNA/Intrados' motion for summary judgment, CIGNA entered into a settlement agreement with Ms. Spears. Def.'s Stat. at 4. Intrados, for its part, stipulated that it would not further defend

1. The Defense Base Act, 42 U.S.C. § 1651, "shall apply in respect to the injury or death of any employee engaged in any employment ... under a contract entered into with the United States or any executive department, independent establishment, or agency thereof (including any corporate instrumentality of the United States), or any subcontract, or subordinate contract with respect to such contract, where such contract is to be performed outside the continental United States ..."
Under the Act, "[t]he liability of an employer, contractor (or any subcontractor or subor-

dinate subcontractor with respect to the contract of such contractor) under this chapter shall be exclusive and in place of all other liability of such employer, contractor, subcontractor, or subordinate contractor to his employees (and their dependents) coming within the purview of this chapter, under the workmen's compensation law of any State, Territory, or other jurisdiction, irrespective of the place where the contract of hire of any such employee may have been made or entered into." 42 U.S.C. § 1651.

against Ms. Spears' claim, but rather would assign to her any right it had to recover from Nationwide in connection with her claims pursuant the business owners' liability policy. Def.'s Stat. at 4. Ms. Spears obtained a judgment for $1,278,000 against Intrados at the conclusion of the Superior Court case. Pl.'s Stat. ¶ 3.

In the course of defending Intrados in the Superior Court case, counsel for CIGNA, Ms. JoAnna Schmidt, inquired as to whether Intrados had any additional insurance policies which could conceivably cover Ms. Spears' claims. Pl.'s Stat. ¶¶ 63, 66, 70–71. Although an initial search did not reveal any applicable policies, on March 10, 1999, in preparation for Ms. Ghadar's deposition, another search was conducted, during which Ms. Ghadar's assistant located a Nationwide policy identifying the insured as "G H Wilmington Inc/Ghadar Associates DBA Intrados International Management." Id. ¶¶ 67, 71.[2] Ms. Ghadar later testified that she did not know what entity was insured by this policy. Id. ¶ 67. Neither did the agent who sold the policy, who testified that, until the date of his deposition, he believed G H Wilmington to be an individual somehow associated with Ms. Ghadar's husband. Evans Dep. at 70. There is also some evidence that the scope of the Nationwide policy was not clear from the face of it, and therefore a cursory review would not necessarily have placed the reader on notice that it covered the type of claim presented by Ms. Spears' circumstances. Pl.'s Stat. ¶ 68. For instance, the agent who sold the policy in 1989 testified that he regarded the policy to cover primarily fire and other damages to buildings. Id.

Ms. Ghadar also testified that, since the accident involving Ms. Spears, Intrados had ceased to exist as a business entity, and had been reorganized into other companies operating out of the same location. Pl.'s Stat. ¶ 85. It is not clear precisely where the Nationwide policy was located at the time it was found, or which company's files held the policy. Id. ¶ 84. Furthermore, Ms. Ghadar reported that there had been a significant turnover of employees who would have known about the policy during the relevant time frames. Id. ¶ 68.

Nevertheless, on March 11, 1999, immediately after the alleged discovery of the existence of the Nationwide business owner's policy and the scope of its coverage, Intrados filed a Notice of Loss relating to Ms. Spears' claims with Nationwide. Def.'s Mot. Summ. J., Ex. 6. On March 16, 1999, Ms. Schmidt, CIGNA's counsel, transmitted the pleadings from the D.C. Superior Court case to Nationwide. Pl.'s Stat. ¶ 83. Louise Quigley, the Nationwide adjuster assigned to handle the claim, made a decision to deny coverage within an hour of receiving it, following a conversation with her supervisor, but without consulting with Nationwide's in-house counsel, as was customary. Id. ¶ 90–91. Both Ms. Quigley and her supervisor, Mr. Palasieski, cite to a Nationwide "policy" of denying claims made more than 90 days from the date of loss as one of the bases for denying Intrados' claim relating to Ms. Spears' injuries. Id. ¶ 92.

---

**2.** Defendant characterizes this evidence as implausible given that it describes events on March 10, 1999, whereas Nationwide's records allegedly reflect contact from Intrados on March 3, 1999 regarding Ms. Spears' claim. *See* Def.'s Surreply at 1–2 n. 1. However, the only documentation submitted by Nationwide, an internal report entitled "Liability Loss Report," lists the date of report as March 11, 1999, which is consistent with the evidence offered by plaintiff. *See* Def.'s Mot. Summ. J. Ex. 9.

It appears undisputed that no effort was made by Nationwide to ascertain the reason for Intrados' delay in reporting Ms. Spears' claim to the company. *Id.* ¶ 96.[3] However, Nationwide counters that, Intrados did not, in any subsequent correspondence, offer any excuse for its failure to provide timely notice of Ms. Spears' August 3, 1998 suit. Def.'s Stat. at ¶ 9. Standing in opposition to this assertion is a letter dated April 16, 1999 to Nationwide, from CIGNA's counsel, Ms. Schmidt, stating that Intrados contacted Nationwide's agent immediately following the accident, but was told that the Nationwide policy did not provide coverage for a "worker's compensation situation." Def.'s Stat. Ex. 18. Ms. Schmidt further asserted in that letter that once the Nationwide policy was discovered and determined to be potentially applicable in March of 1999, Nationwide was "promptly put on notice." *Id.*

Nationwide's March 29, 1999 letter to Intrados cites two reasons for denying the claim arising from Ms. Spears' accident. Def.'s Mot. Summ. J. Ex, 7. First, it refers the reader to the "Notice" provision of Intrados' business owners' policy and asserts that Intrados failed to comply with its terms, which require the insured to "see to it that" Nationwide is "notified *as soon as practicable* of an 'occurrence' or an offense which may result in a claim," and to notify Nationwide "*as soon as practicable*" of any claim or suit filed against the insured. *Id. (quoting* Policy # 52 08 BO 133746–0001, BUSINESSOWNERS LIABILITY COVERAGE FORM, SECTION E—LIABILITY AND MEDICAL EXPENSES GENERAL CONDITIONS, subsection (2) Duties in The Event of Occurrence, Claim Or Suit) [emphasis added]. Second, Nationwide's disclaimer letter

cites to the "auto" exclusion contained in the Intrados policy, which provides that bodily injury or property damage "arising out of the ownership, maintenance, use, or entrustment to others of any ... 'auto' ... owned operated by or rented or loaned to any Insured" is excluded from coverage under the insurance contract. *Id. (quoting* Policy # 52 08 BO 133746–0001, BUSINESSOWNERS LIABILITY COVERAGE FORM, SECTION B—EXCLUSIONS, subsection (1)(g)).

As noted *supra,* there is conflicting evidence as to whether Intrados attempted to notify Nationwide "soon after" Ms. Spears' accident, only to be told that neither of its Nationwide policies afforded coverage for such an occurrence. There is also considerable dispute among the parties with respect to the facts underlying the second basis cited by Nationwide for disclaiming coverage. Plaintiff asserts that the vehicle in which she was traveling on the day of the accident was not owned leased, hired, or borrowed by Intrados. Pl.'s Stat. ¶ 12. Rather, Ms. Spears' position is that the car in question belonged to an Intrados employee, namely the driver, and therefore any claims arising from its use are not excluded from coverage pursuant to the language quoted in the March 29, 1999 disclaimer letter. *See* Pl.'s Stat. ¶ 40. The Nationwide agent "admits that it was his intention to provide coverage to Intrados for claims arising from employee owned vehicles." *Id.*

There are considerable factual disputes in the record relating to the driver's status at the time of the accident. On the one hand, Ms. Spears states that, as one of two team leaders on the Intrados project in the

---

**3.** Plaintiff contends, based on the deposition testimony of Ms. Quigley, that Nationwide considered and rejected the geographic coverage territory clause of the policy as a basis for denying the claim. Pl.'s Stat. ¶ 97. Beyond this, there appears to have been no further research into the facts underlying the claim by anyone at Nationwide. *Id.* ¶ 98.

Ukraine, she was instructed and authorized to hire, fire, manage, and supervise local "employees" on Intrados' behalf. Pl.'s Stat. at ¶ 22–26. Ms. Spears maintains that these local employees were not directly hired by the independent contractors in their own capacities, but rather pursuant to authority delegated by Intrados management. *Id.* ¶ 23. In support of her position, plaintiff points to Intrados' stipulation in the underlying D.C. Superior Court action that the driver of the vehicle in which Ms. Spears was injured was an Intrados employee. Pl.'s Stat. ¶¶ 19–21.

Conversely, Nationwide relies heavily on the deposition testimony of Ms. Ghadar, who testified that "[t]he only person that can hire an Intrados employee are the three people that are seniors in the organization," and that Intrados had no involvement with the negotiations between the consultants and any local persons providing them with assistance as needed. Def.'s Stat. at 6. However, Ms. Ghadar also testified that team leaders were responsible for ascertaining their local needs for the project, and had the authority to hire "local support personnel" depending on those needs. Def. Stat. at 5. Furthermore, she conceded that the driver responsible for Ms. Spears' injuries was not an employee of Ms. Spears'. Ghadar Dep. at 60.

Ms. Ghadar also testified that she did not believe the persons hired locally by the independent contractors to be "employees" of Intrados, based on the fact that they did not receive a full-time salary or benefits. Def.'s Stat. at 6; Pl.'s Stat. ¶ 28. Rather, the team leaders submitted vouchers for the daily rate paid to "drivers," based on which they were reimbursed and invoices were submitted to USAID. Def.'s Stat. at 5. However, Ms. Spears counters that "local personnel hired in Ukraine for the Intrados project worked full-time and received benefits consistent with local law

and practices, i.e. 40% social taxes on wages were a separate contract expense and were paid on behalf of the employees ... [l]ocal personnel also received paid holidays and paid vacation." Spears Aff. ¶ 21.

With respect to the status of the vehicle in which she was traveling at the time of the accident, plaintiff states that no contract existed between Intrados and any party with respect to that particular vehicle. *Id.* ¶¶ 13–15; *but see* Def.'s Stat. at 9 ("drivers for autos hired under separate contracts to provide car and driver to the Intrados consultants while they were in the Ukraine temporarily."). Nor, plaintiff contends, was there any agreement between Intrados and any party that a particular car would be made available to its independent contractors on a daily basis for the period during which they would be in the Ukraine. Pl.'s Stat. ¶ 16. Ms. Spears further submits that Intrados "did not pay for oil, gas, mileage, maintenance or any aspect of ownership that would normally be associated with a 'hired' vehicle," and did not exert exclusive control over the vehicle in which she was riding on the day of the accident. *Id.* ¶¶ 16–18; *but see* Def.'s Stat. at 11 ("Defendant ... asserts that Intrados did exert exclusive use or control over the vehicle."). In fact, Ms. Spears affirms that neither she nor any other person associated with Intrados had any contact whatsoever with the vehicle outside the driver's working hours of approximately 9:00 a.m. to 6:00 p.m. Spears Aff. ¶ 16. Finally, while Ms. Spears assumed the person who served as a local driver brought the same car to work every day, she could not say so with any certainty. 2001 Spears Dep. at 47–48. According to plaintiff, the car in question simply belonged to its driver, an "employee" of Intrados, who used his personal vehicle to assist Intrados with its business activities in the Ukraine. Pl.'s Stat. at ¶¶ 19–21. In

addition to Ms. Spears' sworn testimony in this regard, there is evidence that, at the time when the policy was originally purchased, while discussing with Nationwide's agent which policy would be most appropriate for Intrados, Mr. Fariborz Ghadar, one of the other principals in Intrados, stated that the company did not hire vehicles, although some employees used their personal vehicles on company business. Def.'s Stat. at 7; *but see* Def.'s Mot. Summ. J. Ex. 1 at 2 ("No" response checked to question "Do any employees regularly drive their car on company business?"). Conversely, Ms. Ghadar's testimony is that persons hired as drivers were expected to also provide a car for team members' use: "[b]asically the rate, the daily rate, is a car and driver. It's not just the driver." Def.'s Stat. at 6.

Ms. Spears contends, in support of her assertion that the driver was in fact an employee of Intrados, that locally employed persons were assigned a broad range of duties, including serving as couriers, loading and unloading materials, locating office space, facilitating relations with customs and local utility companies, and generally "facilitating" the consultants' activities.[4] Defendant categorically disputes these allegations, although Ms. Ghadar's testimony does allow for the possibility that a wide range of duties for local personnel would have been appropriate. *See* Ghadar Dep. at 53–55.

Finally, defendant offers the deposition testimony of Mr. Ed Protzman, a Nation-wide underwriter familiar with insurance policies such as the one at issue here, in support of its position that the driver whose conduct resulted in Ms. Spears' injuries was a "hired auto/driver" rather than an Intrados "employee" for the purposes of the policy held by Intrados. Def.'s Stat. at 9. However, Mr. Protzman's testimony essentially offers a legal conclusion based on the facts as characterized by Nationwide, and does not further develop the factual record in this case.[5]

## II. CROSS MOTIONS FOR SUMMARY JUDGMENT

### A. *Standard of Review*

Summary judgment should be granted only if the moving party has shown that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Dunaway v. Int'l Bhd. Teamsters,* 310 F.3d 758, 761 (D.C.Cir.2002). In order for summary judgment to be appropriate, the record before the court must be such that "a reasonable jury could not return a verdict for the nonmoving party." *Washington Post. Co. v. United States Dept. of Heath & Human Serv.,* 865 F.2d 320, 325 (D.C.Cir.1989).

Likewise, in ruling on cross-motions for summary judgment, the court shall grant summary judgment only if one of the moving parties is entitled to judgment as a

---

4. Defendant argues that this testimony contradicts plaintiff's 1999 deposition testimony, which suggests that the duties of the person driving the car on the day in question were limited to providing transportation services on a daily basis. Spears Aff. at ¶ 23–28, *but see* 1999 Spears Dep. at 33–35. However, Ms. Spears' deposition testimony does not categorically contradict her more recent affidavit.

5. In this regard, Mr. Protzman's testimony is similar to that of insurance "expert" Andrew Janquitto, whom defendant sought to call as an expert witness in this case. By Order dated September 30, 2002, the Court denied defendant's motion for reconsideration of its Order granting plaintiff's motion to strike Mr. Janquitto's testimony.

matter of law upon material facts that are not genuinely disputed. *See Rhoads v. McFerran*, 517 F.2d 66, 67 (2d Cir.1975). "The court must rule on each party's motion on an individual and separate basis, determining in each case whether a judgment may be entered" in accordance with Fed.R.Civ.P. 56. *Held v. American Airlines, Inc.*, 13 F.Supp.2d 20, 23 (D.D.C. 1998). "Furthermore, all reasonable inferences of fact must be drawn in favor of the party opposing summary judgment." *Rhoads v. McFerran*, 517 F.2d at 67. The fact that cross-motions for summary judgment are pending does not preclude a finding that genuine issues of material fact exist, as each party concedes that there are no material facts at issue only for the purposes of its own motion. *Sherwood v. Washington Post*, 871 F.2d 1144, 1147–48, n. 4 (D.C.Cir.1989).

Under the law of the District of Columbia, which governs this diversity action, courts construe the terms of an insurance contract as a matter of law. *Nationwide Mutual Ins. Co. v. Richardson*, 270 F.3d 948, 953–54 (D.C.Cir.2001); *J. Akridge Co. v. Travelers Cos.*, 876 F.Supp. 1, 1–2 (D.D.C.1995); *American Red Cross v. Travelers Indem.*, 816 F.Supp. 755, 758 (D.D.C.1993). The following standards govern a court's interpretation and application of an insurance contract:

> the Court must interpret an insurance contract objectively, based on the language of the policy and the expectations that the insured reasonably could have formed on the basis of that language. In determining the "objectively reasonable" reading of the policy, the Court must give effect to the policy's dominant purpose of indemnity. If the policy language is unambiguous, the Court must apply the plain meaning of the language used and should not consider extrinsic evidence as to how to interpret the poli-

cy. If the policy is ambiguous, however, the Court may consider evidence of usages and customs affecting the agreement to determine the parties' intent. Moreover, any ambiguity in the insurance contract must be construed in favor of the insured.

*American Red Cross v. Travelers Indem. Co. of Rhode Island*, 816 F.Supp. at 758 (citations omitted); *see also Nationwide Mutual Ins. Co. v. Richardson*, 270 F.3d at 953–54. However, the resolution of factual disputes remains the province of the jury. Where the record contains contradictory evidence on central facts, a jury must be permitted to make factual findings before the Court may proceed to construction and application of an insurance contract. *See J. Akridge Co. v. Travelers Cos.*, 876 F.Supp. at 2 (finding record before the Court did not permit summary judgment in favor of either party, questions raised by contradictory evidence "must be resolved at trial.").

### B. Notice

The Court is persuaded that there exist genuine issues of material fact precluding summary judgment in either party's favor on the question of notice. *See* Pl.'s Opp'n and Cross–Mot. for Summ J. ("Pl's Opp'n") at 14–25. Until these disputed facts are resolved, this Court cannot ascertain the effect of the notice provision of the Nationwide insurance contract on the viability of plaintiff's claims against Nationwide. *See Greycoat Hanover F Street Ltd. Partnership v. Liberty Mut. Ins. Co.*, 657 A.2d 764, 768 (1995) ("In the District of Columbia, where compliance with the notice provisions is a contractual precondition to coverage, failure timely to notify releases the insurer from liability.").

The language of the notice provision itself clearly suggests a fact-driven inquiry, requiring the insured to notify the defen-

dant "as soon as practicable" of any occurrence, claim, or suit. *See Diamond Service Co., Inc. v. Utica Mut. Ins. Co.* 476 A.2d 648, 652 (D.C.1984) ("The words 'as soon as practicable,' generally found in the notice clause, 'have uniformly been held to mean within a reasonable time in view of all the facts and circumstances of each particular case.' "). What is reasonable or practicable for the purposes of a notice provision in an insurance contract "will often be a question for the jury." *Greycoat Hanover F Street Ltd. Partnership v. Liberty Mut. Ins. Co.*, 657 A.2d at 768. Although "where ... the evidence as to timing is uncontradicted, reasonableness of the delay may become a question of law," such is not the case here. *See id.*

It is clear from the record before the Court that contradictory evidence has been offered with respect to whether Mr. Evans, the Nationwide Insurance Agent who sold Intrados the policy at issue, was contacted by a representative of Intrados shortly after the August 1995 accident. Pl.'s Stat. ¶ 63, 74–75, 78, 80–81. Defendant discounts the evidence offered by plaintiff in support of these allegations as hearsay and therefore inadmissible, as well as internally inconsistent. Def.'s Stat. at 4, Def.'s Surreply at 2 n. 1 (citing Schmidt Aff. ¶ 6, stating that a Nationwide agent told an Intrados representative that Ms. Spears' claims would properly fall under a worker's compensation claim, and Schmidt Aff. ¶ 11, stating that a Nationwide agent said that the claims fell within the scope of the DBA and policies issued consistent with that legislation). However, the hearsay relied on by plaintiff is attributed to Ms. Ghadar, who presumably, will be a witness at trial, and therefore can be questioned on this precise statement without running afoul of the rules of evidence. Schmidt Aff. ¶ 11.

There is also some dispute as to whether, under Nationwide's policies, notice to an independent agent such as Mr. Evans is sufficient to comply with the notice provisions of the insurance policy in question. Defendant argues that, even if Intrados had contacted Mr. Evans in 1995, this still would not have provided sufficient notice to Nationwide of Ms. Spears' claim because "[c]alling an agent is not an acceptable means of notifying Nationwide because claims are to be made to the Claims Department." Def.'s Stat. at 8. However, Mr. Evans, Nationwide's agent, testified that both contacting the agent or contacting the Claims Department directly were acceptable means of filing a claim with Nationwide. Evans Dep. at 75–76.. Furthermore, Mr. Evans' testimony is internally inconsistent with respect to whether he has the authority, apparent or otherwise, to give the kind of claims advice he is alleged to have provided the person who allegedly contacted him on Intrados' behalf. *Id.* at 75–78, 82, 122.

Additionally, there are factual disputes relevant to the question of whether and when Intrados could reasonably have been on notice that the Nationwide policy was a potential source of coverage for Ms. Spears' claims. Defendant argues that plaintiff's contention that "someone" called Mr. Evans, the Nationwide agent, in 1995 to report the accident amounts to an admission that Intrados was aware as of 1995 of the existence of the Nationwide business owner's policy, and that its coverage could possibly reach the circumstances of Ms. Spears' injury. Def.'s Reply at 10,11–12. However, the question of whether such a call was ever made, as well as its contents, which plaintiff contends included a statement by Mr. Evans suggesting that the Nationwide worker's compensation policy would not cover Ms. Spears' claims, are disputed, as discussed *supra.*

Defendant also submits that plaintiff's admission that Intrados held a Nationwide workers' compensation policy conclusively establishes that Intrados should have been aware of its obligation to contact Nationwide immediately after the accident. Def.'s Stat. at 3, Def.'s Reply at 10. However, once again, plaintiff has offered evidence that Mr. Evans told an Intrados employee that the workers' compensation policy was not applicable because the DBA applied, and that he did not refer to the business owners' policy naming G H Wilmington as the insured. Pl.'s Reply at 8. These factual disputes regarding the circumstances under which Intrados may or may not have been aware of potential coverage under one or both of the Nationwide policies, and did or did not contact Nationwide soon after the August 1995 accident, cannot be resolved by the Court on the record before it, and are appropriately submitted to a jury.

■■■■ Furthermore, plaintiff has offered evidence, which, if believed by a jury, could amount to mitigating circumstances or excuse late notification should the jury find that Intrados did not notify Nationwide of Ms. Spears' claims until March of 1999. Although "absent some excuse or mitigating circumstance, the court, rather than a jury, is to decide the question of whether prompt notice of claim has been given to insurer by insured," "uncertainty or unawareness of insurance coverage is a · mitigating circumstance which may present a triable issue of timely notice." *Lugo v. AIG Life Ins. Co.*, 852 F.Supp. 187, 193–94 (S.D.N.Y.1994). "When the insured offers mitigating circumstances to explain the delay in giving notice, the reasonableness of these circumstances is ordinarily considered a factual issue for trial." *Leonzo v. First Unum Life Ins. Co.*, No. 93 Civ. 0535, 1994 WL 455203 (S.D.N.Y. Aug. 23, 1994). Notwith-

standing defendant's assertion that Intrados never offered any excuse for the delay in notification, plaintiff has offered evidence, based on Ms. Ghadar's and Ms. Schmidt's testimony, that Intrados was unaware of the existence, location, or scope of the Nationwide business owner's insurance policy in the name of G H Wilmington at the time of the accident, or any time thereafter until March 10, 1999. Pl.'s Stat. ¶¶ 67–68, 73, 85. Plaintiff has also offered evidence, through her own sworn testimony and that of Ms. Ghadar, that there was considerable confusion surrounding the proper legal basis for Ms. Spears' claims, which were admittedly unusual due to her status as an independent contractor and the potential application of the DBA. Pl.'s Stat. ¶¶ 45, 47–48, 68, 74.

Some of the factors identified by the D.C. Court of Appeals as relevant to the question of whether a delay in notifying an insurance company of a potential claim is reasonable include:

> (1) what the insured could have believed were its obligations under the policy, (2) what the insured could have believed about its likely liability in the underlying action, and (3) what the insured could have believed about the likelihood of being sued.

*Greycoat Hanover F Street Ltd. Partnership v. Liberty Mut. Ins. Co.*, 657 A.2d at 769. Here, plaintiff has come forward with some evidence which, if believed by a jury, could support a finding that Intrados' belief, prior to at least August of 1998, that it could not be subject to any liability beyond that covered by the CIGNA DBA policy, was reasonable. *See* Pl.'s Stat. ¶¶ 45, 47, 51; Ghadar Dep. at 88–90; Pl.'s Opp'n at 15–16, Pl.'s Reply at 9–10. She has also offered evidence which could support a finding that Intrados' belief that there were no policies other than the one underwritten by CIGNA which could serve

potential sources of insurance coverage for Ms. Spears' claims was reasonable under the circumstances. *See* Ghadar Dep. at 88–90; Evans Dep. at 70. If a jury were to make either of these findings, they could amount to mitigating circumstances sufficient to justify Intrados' delay in notifying Nationwide of Ms. Spears' accident. *See Greycoat Hanover F Street Ltd. Partnership v. Liberty Mut. Ins. Co.*, 657 A.2d at 769; *Starks v. North East Ins. Co.*, 408 A.2d 980, 981, 982–83, n. 6 (D.C.1979) (reasonable belief that policy did not cover incident giving rise to claim can justify delay in notification of insurance company; remanding for jury consideration of whether plaintiff notified insurance company "as soon as practicable"); *see also American Institute of Architects v. Interstate Fire & Cas. Co.*, 986 F.2d 1455, 1459 (D.C.Cir.1993) (applying similar interpretation of "as soon as practicable" language in insurance contracts under Illinois state law and finding that uncertainty regarding coverage and pendency of claim can be mitigating factors with respect to delays in notification of insurance carrier, noting "unusual nature" of dispute and evidence that broker did not believe there was a coverable claim); *Lugo v. AIG Life Ins. Co.*, 852 F.Supp. at 193–94 (where insured believed plaintiff would assert a particular type of claim and knew insurer did not cover such claims, delay in notifying insurance company until insured knew exact nature of plaintiff's claims is a mitigating circumstance which may present a triable issue of timely notice; adopting "good faith reasonable belief of non-liability" standard); *Wraight v. Exchange Ins. Co.*, 234 A.D.2d 916, 651 N.Y.S.2d 803 (4th Dept.1996) (excusing delay in notifying insurance company of claim where plaintiff made reasonable efforts to discover existence of insurance policy).

The question of whether Intrados' asserted beliefs that a claim under the DBA, covered by the CIGNA insurance policy, was Ms. Spears' exclusive remedy, there was no possibility of tort liability under the particular circumstances of Ms. Spears' injuries, and that it was not insured under any other policy which might provide coverage for her injuries, were reasonable is a fact-intensive one. As such, it is not amenable to resolution on summary judgment, but rather requires fact finding and credibility determinations. *See Greycoat Hanover F Street Ltd. Partnership v. Liberty Mut. Ins. Co.*, 657 A.2d at 769 (noting that a close case may be presented where the "insured knows that it is involved in an accident but decides that it is not liable."); *Starks v. North East Ins. Co.*, 408 A.2d at 982 ("Even in a case involving uncontradicted evidence, the question of whether the insured acted reasonably becomes a question of law only when reasonable person can draw but one inference and that inference points 'unerringly' to the conclusion that the insured has not acted reasonably under the circumstances.").

Defendant also argues that, even if Intrados' delay in notifying Nationwide immediately after the accident is excusable, its delay in doing so after Ms. Spears' suit was filed cannot be, as a matter of law. Def.'s Reply at 18–19. However, plaintiff has offered evidence from which a jury could conclude that the delay was reasonable both before and after suit was filed, thereby precluding summary judgment on this basis. Moreover, the Court cannot ascertain from the record precisely when Intrados was served with notice of plaintiff's complaint in the D.C. Superior Court action, suggesting the existence of yet another factual question which will need to be resolved before the question of whether delay in notification after the suit was filed was reasonable can be reached. *See* Pl.'s Reply Exs. 10, 11.

Accordingly, the Court rejects defendant's contention that the length of Intrados' delay in providing Nationwide with notice of Ms. Spears' claims, along with the circumstances surrounding the delay, are such that this Court must conclude, as a matter of law, that plaintiff is precluded from recovering the judgment entered against Intrados from Nationwide pursuant to the business owner's insurance policy. *See* Def.'s Reply at 6.

### C. Hired Auto/Non–Owned Auto Endorsement

As an initial matter, the Court rejects out of hand, as a matter of law, plaintiff's contention that Intrados' Nationwide business owner's policy included an endorsement providing Intrados with coverage for "Hired Auto Liability." *See* Pl.'s Opp'n at 31 n. 4, 39; Def.'s Mot. Summ. J. at 20–21, Ex. 2, Hired Auto and Non–Owned Auto Liability Endorsement at 1. It is clear from the face of the policy in question that it included only the Non–Owned Auto Liability Endorsement. Def.'s Mot. Summ. J. at 20–21, Ex. 2, Hired Auto and Non–Owned Auto Liability Endorsement at 1. Plaintiff's attempts to create a genuine issue of fact with respect to the plain language of the policy are unpersuasive. Pl.'s Opp'n at 39–41.

■ However, it is equally clear to the Court that Intrados' Nationwide business owner's policy provided for coverage of "bodily injury" arising from the use of any "non-owned auto," defined as "any 'auto' you do not own, lease, hire or borrow which is used in connection with your business." Def.'s Mot. Summ. J. Ex. 2, Hired Auto and Non–Owned Auto Liability Endorsement at 1–2. A car leased, hired, or borrowed from "any ... employees or members of their households ..." is excluded from the definition of a "hired auto." Def.'s Mot. Summ. J. Ex. 2, Hired Auto and Non–Owned Auto Liability Endorsement at 2.

Moreover, the Court finds that genuine issues of material fact exist which are central to ascertaining whether the car in which Ms. Spears was traveling at the time of the accident was in fact "hired" or "leased" within the meaning given those terms by courts construing similar provisions in insurance contracts, or was a car leased, hired, or borrowed from an "employee" of the insured, Intrados. The resolution of this question depends on whether the driver was indeed an Intrados employee, and the facts to which the Court must look to in order to make this determination are hotly contested. While defendant correctly asserts that it is undisputed that the driver was hired by Intrados independent contractors, it is uncertain from the record before the Court whether the driver's relationship with Intrados was that of a subcontractor or an employee.

On the one hand, Ms. Ghadar testified that "[t]he only person that can hire an Intrados employee are the three people that are seniors in the organization," and that Intrados had no involvement with the negotiations between the consultants and any local persons providing them with assistance as needed. Def.'s Stat. at 6. Ms. Ghadar also testified that she did not believe the persons hired locally by the independent contractors to be "employees" of Intrados, based on the fact that they did not receive a full-time salary or benefits, a proposition Ms. Spears' disputes in her sworn testimony. Def.'s Stat. at 6; Pl.'s Stat. ¶ 28. Furthermore, there is evidence that Intrados' stipulated in the underlying D.C. Superior Court action that the driver of the vehicle in which Ms. Spears was injured was an Intrados employee. Pl.'s

Stat. 19–21.[6] Ms. Ghadar also testified that team leaders were responsible for ascertaining their local needs for the project and had the authority to hire "local support personnel" depending on those needs. Def. Stat. at 5. Furthermore, she conceded that the driver responsible for Ms. Spears' injuries was not an employee of Ms. Spears'. Ghadar Dep. at 60.

Moreover, there is conflicting evidence regarding how the driver was paid, the scope of his duties, and his relationship with the independent contractors and Intrados, the existence of an oral contract hiring the driver's car, and the degree to which Intrados delegated its powers of employment to the independent contractors. These factual disputes will have to be resolved by a jury before the Court can

6. In a different context, defendant challenges this evidence, an affidavit from plaintiff's attorney, Mark Westerfield, submitting that "this affidavit must be disregarded unless he plans to withdraw as Plaintiff's attorney to become a witness in this case." Def.'s Stat. at 4. The Court need not decide at this point whether such withdrawal is necessary, as plaintiff may be able to access alternative sources for this information, such as a transcript of the pre-trial and trial record in the Superior Court case. Alternatively, Mr. Westerfield may indeed voluntarily elect to withdraw as plaintiff's attorney in order to offer evidence to this effect in this case. It suffices, for the purposes of a motion for summary judgment, that there is a sworn affidavit attesting to the fact in question.

7. Contrary to defendant's assertions, this not a case where the only factual ambiguities are created by the plaintiff's own testimony, thereby precluding denial of summary judgment. Def.'s Reply at 22–24. First, Ms. Spears' deposition testimony is not inconsistent with her more recent affidavit. *See id.* Ms. Spears' 1999 affirmative response to the question "So would this driver report to the hotel and just hang out there until someone involved with the project needed him to go somewhere or take them somewhere?" is not inconsistent with her later assertions that the driver's duties included, *inter alia,* serving as

apply the plain language of the insurance contract to Ms. Spears' claims.[7] *See Beegle v. Restaurant Management, Inc.,* 679 A.2d 480, 485 (D.C.1996) (outlining factors to be considered when determining whether an employment relationship exists as (1) selection; (2) payment of wages; (3) power to discharge; (4) right of control; (5) whether the work is part of the regular business of the employer).

Plaintiff further submits, citing to authority from the Fifth Circuit interpreting a "hired auto" clause in an insurance contract to not reach circumstances where an independent contractor was hired to provide transportation services with a truck he owned, that the question of whether the driver was an employee is not dispositive if

a courier, "go-fer," and "facilitator" with local authorities. 1999 Spears Decl. at 33–34; Spears Aff. ¶¶ 23, 28–32. Furthermore, Ms. Spears' testimony directly contradicts the testimony of Ms. Ghadar, heavily relied on by the defendant, with respect to several of the factors set forth in the *Beegle* opinion. Def.'s Reply at 24. Moreover, Ms. Ghadar's testimony is also somewhat internally contradictory, or at the very least confusing, in this regard. Accordingly, plaintiff is entitled to place both Ms. Spears' and Ms. Ghadar's credibility on these questions before a jury.

Defendant's contention that Ms. Spears' recent affidavit consists of nothing more than legal conclusions and therefore should not be considered at all by the Court is equally without merit. Def.'s Reply at 22 n. 6. In the portions of the affidavit referenced here, Ms. Spears sets forth factual allegations regarding precisely how local "personnel" were hired and what their daily duties were. Her use of legal terms such as "employee" and "contract" is considered by the Court only to the extent those words are used in common parlance, and not as conclusive on ultimate issues. For instance, when stating that there was no "contract" for use of the vehicle in which she was injured, the Court understands Ms. Spears to be stating that she did not believe she had entered into any agreement specific to a particular vehicle. *See* Spears Aff. ¶ 12.

decided against her on summary judgment. *See Toops v. Gulf Coast Marine*, 72 F.3d 483 (5th Cir.1996). If the Court were to adopt the Fifth Circuit's reasoning in *Toops*, and construe the "Hired Auto" clause at issue in this case accordingly, evidentiary contradictions regarding the exact nature of the contract, if any, between the driver and the Intrados consultants would remain, precluding summary judgment in favor of either party based on the Non–Hired Auto Exclusion Endorsement in the Nationwide/Intrados insurance policy. *See* Pl.'s Reply at 16; Def.'s Reply at 25 (citing to payment vouchers for drivers, Def.'s Mot. Summ. J. Ex. 11, as evidence of the existence of a contract with the drivers, vouchers make no reference to car, only to "driver").

### D. *Coverage Territory*

■ Defendant next contends that Ms. Spears is precluded from recovery in this case on a third ground not previously raised in the March 29, 1999 letter disclaiming coverage to Intrados for Ms. Spears' injuries. Citing to the "Coverage territory" provision of the Nationwide business owners' policy, Nationwide contends that Ms. Spears' "bodily injury" did not occur within "coverage territory" and is therefore not within the scope of the policy. The relevant provision states:

"Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, provided the injury or damage did not occur in the course of travel or transportation to or from any place not included in a. above; or

c. All parts of the world if:

(1) the injury or damage arises out of:

(a) Goods or products made or sold by you in the territory described in a. above; or

(b) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business . . .

Def.'s Mot. Summ. J. Ex. 2 at 10. Nationwide correctly maintains that Ms. Spears' claims obviously cannot be covered under a. or b. of the cited section of the policy. However, it is clear to the Court that Ms. Spears' claim against Intrados falls squarely within the language of c.(1)(b).

While defendant concedes that Ms. Spears is a person whose home is in the United States and who was away in the Ukraine at the time of the accident for a short time on Intrados' business, it submits that her injuries did not arise out of *her* activities, but rather those of the Ukranian driver whose negligence caused the accident. The Court, mindful of its obligation to apply to an insurance contract the interpretation a reasonable lay person would, and to construe any ambiguities in favor of the insured whenever reasonable, will not adopt such a tortured construction of the provision's plain language. *See Nationwide Mutual Ins. Co. v. Richardson*, 270 F.3d at 954; *Continental Cas. Co. v. Cole*, 809 F.2d 891, 895 (D.C.Cir.1987). Even if the Court were to take the position that the provision at issue is ambiguous, the defendant has offered nothing in the way of extrinsic evidence that would support its position. *See American Red Cross v. Travelers Indem. Co.*, 816 F.Supp. at 758, 760 n. 7. In light of the undisputed fact that Ms. Spears was traveling in the car on her way from a meeting in connection with the Intrados/USAID contract, the Court finds, as a matter of law, that Ms. Spears' injuries arose out of her activi-

ties on Intrados business in the Ukraine.[8] *See Clark v. D.C. Dept. of Empl. Serv.,* 743 A.2d 722, 727 (D.C.2000) (stating in the context of a worker's compensation claim, "[i]n evaluating whether an injury 'arises out of' employment, the District of Columbia has adopted the positional-risk standard ... Pursuant to the positionalrisk test, an injury arises out of employment so long as it would not have happened but for the fact that conditions and obligations of the employment placed claimant in a position where he was injured.").

## IV. CONCLUSION

Upon careful consideration of the parties' motions for summary judgment, the oppositions, replies, and surreply thereto, the entire record herein, and the governing statutory and case law, it is by the Court hereby

**ORDERED** that defendant's motion for summary judgment [20–1] is **DENIED**; and it is

**FURTHER ORDERED** that plaintiff's cross-motion for summary judgment [24–1] is **DENIED**; and it is

**FURTHER ORDERED** that the parties shall file a Joint Pretrial Statement in strict compliance with Local Rules 16.5(b) and 16.5(d)(1)(2) & (3) by no later than **May 15, 2003**; and it is

**FURTHER ORDERED** that Local Rule 16.5(e) objections shall be filed by each party by no later than **June 15, 2003** and responses to objections shall be filed by **July 30, 2003**; and it is

**FURTHER ORDERED** that this case is hereby **REFERRED** to Magistrate Judge Alan Kay for settlement discussions. The parties are directed to contact Magistrate Judge Kay by no later than **April 11,**

2003 to set a date for an initial settlement conference; and it is

**FURTHER ORDERED** that a Pretrial Conference is scheduled in this case for **September 19, 2003, at 12:00 p.m.** in Courtroom One.

---

8. As a result, the Court need not reach the question of whether Nationwide waived its right to disclaim coverage on the basis of the "coverage territory" clause by failing to rely on this basis in its letter of March 29, 1999. *See* Def.'s Mot. at 31–32.