**NATIONWIDE MUTUAL INSURANCE COMPANY, Appellee.**

v.

**Antoinette RICHARDSON, Appellant.**

No. 00–7203.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 10, 2001.

Filed Nov. 2, 2001.

David P. Sutton argued the cause for appellant. With him on the brief was Robert J. Pleshaw.

Catherine M. Colinvaux argued the cause for appellee. With her on the brief was David P. Durbin.

Before: GINSBURG, Chief Judge, EDWARDS and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

CERTIFICATION OF QUESTION OF LAW by the United States Court of Appeals for the District of Columbia Circuit to the District of Columbia Court of Appeals pursuant to D.C.CODE § 11–723 (2001)

HARRY T. EDWARDS, Circuit Judge:

The disposition of this appeal depends upon the proper application of District of Columbia law to resolve a dispute over the scope of a *pollution exclusion clause* in a liability insurance policy. The contested provision, which is common in commercial comprehensive general liability insurance policies, excludes liability coverage for injuries or damage arising out of events involving the release or escape of "pollutants." Courts around the country have divided in construing the scope of the pollution exclusion clause. Some courts read the clause expansively and thereby give broad reach to the exclusion, and others find the clause ambiguous and construe it narrowly in favor of insured parties seeking coverage.

The District of Columbia Court of Appeals has yet to consider the scope of the pollution exclusion clause under District of Columbia law. We are mindful that a "federal court . . . should normally decline to speculate on . . . a question of local doctrine." *East v. Graphic Arts Indus. Joint Pension Trust,* 107 F.3d 911, 911 (D.C.Cir.1997) (quoting *Delahanty v. Hinckley,* 845 F.2d 1069, 1070 (D.C.Cir. 1988)). In deciding whether to certify such a question to the District of Columbia Court of Appeals, we ask whether District of Columbia law is "genuinely uncertain" with respect to the dispositive question, *Dial A Car, Inc. v. Transp., Inc.,* 132 F.3d 743, 746 (D.C.Cir.1998) (citing *Tidler v. Eli Lilly & Co.,* 851 F.2d 418, 426 (D.C.Cir. 1988)), and whether the case "is one of extreme public importance," *id.* (citing *Joy v. Bell Helicopter Textron, Inc.,* 999 F.2d 549, 563–64 (D.C.Cir.1993)). Where there is a "discernable path for the court to follow," we do not avoid deciding the question. *Id.* District of Columbia law presents no such path in this case, and, while the scope of the pollution exclusion clause has been the subject of extensive litigation in other jurisdictions, we can find no common ground of opinion among the courts that have construed the clause. Finally, the question is one of significant import to the public. Because the pollution exclusion clause appears in the standard commercial comprehensive general liability policy, it potentially affects the insurance coverage of most businesses in the District of Columbia. *See, e.g., Doerr v. Mobil Oil Corp.,* 774 So.2d 119, 123 n. 1 (La.2000) ("Some form of this pollution exclusion is part of the standard [commercial general liability] policy purchased by almost all large and small businesses since the mid–1980s.") (citation omitted).

Given the extreme public importance of the question, the likelihood of its recurrence in future cases, and the absence of a discernable answer within local law, we certify the following question of law to the District of Columbia Court of Appeals pursuant to D.C.CODE § 11–723:

In light of the facts set forth below, does the pollution exclusion clause apply to

injuries arising from alleged carbon monoxide poisoning?

## I. BACKGROUND

### A. Procedural and Factual Background

The parties to this litigation have included Antoinette Richardson, an intervenor before the District Court and now the appellant; REO Management, Inc. ("REO"), the defendant before the District Court; and Nationwide Mutual Insurance Co. ("Nationwide"), the plaintiff before the District Court and now the appellee.

The facts in this case are largely undisputed. Ms. Richardson worked in the District of Columbia as a security guard in an apartment complex managed by REO Management. REO is organized under the laws of the District of Columbia, where it has its principal place of business. At the time of the events in question, REO held a comprehensive general liability insurance policy (Policy No. 52PR–147–539–0001M) ("the policy"), which it had purchased from Nationwide, an Ohio corporation. The policy provided liability protection for the apartment complex where Ms. Richardson worked.

In February, 1995, a gas furnace or furnaces in the apartment complex where Ms. Richardson worked allegedly began to leak carbon monoxide. Ms. Richardson and another person in the apartment complex claimed to have been overcome and disabled by carbon monoxide fumes. Ms. Richardson sued REO and two other defendants in District of Columbia Superior Court, alleging negligent maintenance of the furnaces and failure to supervise and train properly the people who worked on them. In her complaint, she stated that she was at all relevant times a resident of Maryland.

In May, 1999, Nationwide filed an action for a declaratory judgment in the United States District Court for the District of Columbia seeking a declaration that it was not obligated to defend or indemnify REO in Ms. Richardson's underlying Superior Court lawsuit. Nationwide asserted that the pollution exclusion clause in REO's insurance policy barred coverage for damages arising out of Ms. Richardson's claims. The policy provides, in relevant part:

> This insurance does not apply to: ... f. Pollution (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants.... Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.

Nationwide moved for summary judgment based, in part, on the pollution exclusion clause. In December 1999, Ms. Richardson filed a motion to intervene in the declaratory judgment action in the District Court. She alleged, *inter alia,* that the defendant REO was a "shell corporation," lacking any assets except the insurance policy. She further alleged that her interests could not adequately be represented by REO, because her negligence suit in Superior Court against REO gave rise to a conflict of interest.

The District Court issued an Order and Memorandum Opinion denying Ms. Richardson's motion to intervene as of right pursuant to Federal Rule of Civil Procedure 24(a) on the grounds that she lacked a sufficient interest relating to the subject of the action, because she had yet to receive an enforceable judgment in her underlying Superior Court suit. Instead, the District Court allowed her to intervene permissively pursuant to Rule 24(b), on the condition that she advance only those arguments that the defendant REO had failed to make. At the same time, the District Court granted Nationwide's mo-

tion for summary judgment, holding that the pollution exclusion clause "clearly and unambiguously" barred coverage for Ms. Richardson's alleged injuries. The District Court determined that District of Columbia law governed the case and that no court in the District of Columbia had interpreted the relevant language. While it acknowledged that courts in other jurisdictions have taken different approaches to interpreting pollution exclusion clauses, the District Court held that to find the clause ambiguous in this case "would be to seek out ambiguities in the contract where none exist." Ms. Richardson appealed.

### B. History of the Pollution Exclusion Clause.

The pollution exclusion clause that appears in REO's insurance policy is part of a standard form commercial comprehensive general liability policy. The clause's history is well-known. Before 1966, the standard comprehensive general liability form provided coverage for property damage and bodily injury caused by "accident." JEFFREY W. STEMPEL, INTERPRETATION OF INSURANCE CONTRACTS § T1.1, at 826 (1994). Courts often interpreted the standard policy to cover injuries related to environmental pollution. Am. States Ins. Co. v. Koloms, 177 Ill.2d 473, 227 Ill.Dec. 149, 687 N.E.2d 72, 79 (1997) (detailing the history of the pollution exclusion clause). The insurance industry responded by changing the policy to cover "occurrences" and attempting to define occurrences to exclude long-term environmental pollution. See id. at 79–80. Courts nonetheless continued to interpret the policy to cover damages resulting from such pollution. Id. at 80 (citing New Castle County v. Hartford Accident & Indem. Co., 933 F.2d 1162, 1197 (3d Cir.1991)).

Beginning in 1970, insurers began adding an endorsement to the standard-form policy excluding coverage for damage arising out of "the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water." STEMPEL, supra, § T1.1, at 826–27 (citation omitted). The clause contained an exception for discharges that were "sudden and accidental." Id. at 826. The clause was incorporated into the standard comprehensive general liability policy itself in 1973. Koloms, 227 Ill. Dec. 149, 687 N.E.2d at 80. Much litigation ensued over the meaning of the "sudden and accidental" exception. See generally STEMPEL, supra, § T1.2 (describing the litigation).

Insurance companies responded to the litigation by adopting a new version of the exclusion in the mid–1980s, known as the "absolute" or "total" pollution exclusion clause. See Koloms, 227 Ill.Dec. 149, 687 N.E.2d at 81. This version is virtually identical to the one that appears in the REO insurance policy. The new version eliminated the "sudden and accidental" exception and the requirement that the discharge be "into or upon land, the atmosphere or any water course." STEMPEL, supra, §§ T1.1, T1.3, at 826, 828–29 (quoting both versions). The amended clause was intended by the insurance industry to bar coverage for the costs of environmental cleanups. See W. Am. Ins. Co. v. Tufco Flooring E., Inc., 104 N.C.App. 312, 409 S.E.2d 692, 699 (1991), overruled on other grounds by Gaston County Dyeing Mach. Co. v. Northfield Ins. Co., 351 N.C. 293, 524 S.E.2d 558, 565 (2000); see also Essex Ins. Co. v. Tri–Town Corp., 863 F.Supp. 38, 39–40 (D.Mass.1994) ("[T]he insurance industry reacted with lightning speed to the possibility that … it could find itself indemnifying industries facing the staggering retroactive pollution clean-up costs imposed by the 1980 enactment of the

Comprehensive Environmental Response Compensation and Liability Act [citation omitted].").

## II. ANALYSIS

### A. Intervention

■ On appeal, Ms. Richardson argues that the District Court erred in denying her the opportunity to intervene as of right and without conditions. However, before this court, Nationwide does not oppose Ms. Richardson's request that she be permitted to argue all issues on appeal that were raised below concerning the scope of the pollution exclusion clause. Ms. Richardson has therefore not claimed that she was prejudiced in her appeal before this Court by the District Court's ruling on her motion to intervene.

If the District of Columbia Court of Appeals determines that the pollution exclusion clause does not foreclose liability coverage of a claim of the sort raised by Ms. Richardson, it may be necessary for this court to remand the case to the District Court for further proceedings. In that event, it will be up to the District Court to determine in the first instance whether Ms. Richardson may develop facts in support of the argument that the clause is inapplicable to the carbon monoxide leak that allegedly caused her injuries. It is unnecessary for us to decide at this point whether, if the case is remanded, the District Court will be required to permit Ms. Richardson to present arguments outside the scope of the conditions set forth by the District Court in its Memorandum Opinion and Order. Instead, we merely find that since Ms. Richardson was not prejudiced in her appearance before this court, we need not now resolve her claim that she should have been allowed to intervene as of right.

### B. The Pollution Exclusion Clause

#### 1. District of Columbia Law Governs the Policy's Interpretation

■ The District Court correctly determined that District of Columbia law governs the interpretation of the insurance policy. The District Court sat in diversity because the amount in controversy exceeded $75,000 and the parties were completely diverse. "A federal court sitting in diversity jurisdiction applies the choice of law rules of the forum state (or district or territory)...." *Liberty Mut. Ins. Co. v. Travelers Indem. Co.*, 78 F.3d 639, 642 (D.C.Cir.1996) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). District of Columbia courts apply the law of the state with the more substantial interest in the matter. *Blair v. Prudential Ins. Co. of Am.*, 472 F.2d 1356, 1359 (D.C.Cir.1972) (citing *Fowler v. A & A Co.*, 262 A.2d 344, 348 (D.C.1970)). In this case, the District of Columbia has the most substantial interest, since it is both the location where the underlying events occurred and the place of the insured's headquarters. *See Greycoat Hanover F St. Ltd. P'ship v. Liberty Mut. Ins. Co.*, 657 A.2d 764, 768 (D.C. 1995); *Potomac Elec. Power Co. v. Cal. Union Ins. Co.*, 777 F.Supp. 968, 973 (D.D.C.1991). Thus, the insurance policy must be interpreted in accordance with District of Columbia law.

#### 2. Legal Approaches to the Pollution Exclusion Clause

■ The District of Columbia Court of Appeals has never directly addressed the scope of the pollution exclusion clause as applied to an event, such as residential carbon monoxide poisoning, that does not involve typical forms of environmental pollution. Under District of Columbia law, an insurance policy is a contract whose construction is based on its language. *Cameron v. USAA Prop. &*

*Cas. Ins. Co.*, 733 A.2d 965, 968 (D.C.1999). The burden is on the insurer to spell out in "terms understandable to the man in the street" any provisions that would exclude coverage. *Id.* (quoting *Holt v. George Washington Life Ins. Co.*, 123 A.2d 619, 621 (D.C.1956)). Unless the language of such a provision is unambiguous, doubts are to be resolved in favor of the insured. *Id.* (citations omitted). This is because insurers draft the contracts, with the help of experts and lawyers. *Id.* (citing *Hayes v. Home Life Ins. Co.*, 168 F.2d 152, 154 (D.C.Cir.1948)). The doctrine of *contra preferentum*, however, does not permit "forced constructions" or otherwise strained readings in order to create obligations against insurers. *See id.* (citing *Boggs v. Motors Ins. Corp.*, 139 A.2d 733, 735 (D.C.1958)). Nor does mere disagreement among parties as to the meaning of a term constitute ambiguity. *Byrd v. Allstate Ins. Co.*, 622 A.2d 691, 693–94 (D.C. 1993) (citations omitted).

Under District of Columbia law, where a provision in an insurance policy is unambiguous, it must be enforced as written unless contrary to public policy. *See Smalls v. State Farm Mut. Auto. Ins. Co.*, 678 A.2d 32, 35 (D.C.1996). Only when a provision's meaning is ambiguous is it interpreted in a manner consistent with the "reasonable expectations" of the insured. *See id.* This rule stands in contrast to the law in some other states, in which courts apply the doctrine of the insured's "reasonable expectations" to construe even unambiguous provisions in favor of the insured. *See, e.g., Reg'l Bank of Colo., N.A. v. St. Paul Fire & Marine Ins. Co.*, 35 F.3d 494, 497 (10th Cir.1994) (stating that, under Colorado law, even if an insurance policy is unambiguous, it is construed in light of the reasonable expectations of the ordinary policyholder).

The question, therefore, is whether the District of Columbia Court of Appeals would find the pollution exclusion clause ambiguous as applied to the facts of this case. In attempting to determine how the District of Columbia Court of Appeals would rule on this issue, the District Court gave some weight to the fact that the Fourth Circuit applied District of Columbia law in finding the pollution exclusion clause unambiguous when applied to the release of manganese fumes. *Nationwide Mut. Ins. Co. v. Nat'l REO Mgmt., Inc.*, Civ. Action No. 99–1322, Mem. Op. at 14 (D.D.C. July 26, 2000) (citing *Nat'l Elec. Mfrs. Ass'n v. Gulf Underwriters Ins. Co.*, 162 F.3d 821 (4th Cir.1998)). While we take the Fourth Circuit's efforts to determine how the Court of Appeals would rule into account, we do not find its conclusion decisive in this case. The Fourth Circuit found the pollution exclusion provision to be unambiguous based on its plain language. *Nat'l Elec. Mfrs. Ass'n*, 162 F.3d at 825. It then considered whether to apply the "reasonable expectations" doctrine to restrict the provision to environmental pollution. *Id.* The court correctly found that District of Columbia law forbids application of the reasonable expectations doctrine to alter an otherwise clear policy provision. *Id.* We remain uncertain, however, whether the provision is, in fact, unambiguous under District of Columbia law, and the Fourth Circuit's determination on that point is not conclusive.

Courts across the nation are hopelessly divided over whether the clause is ambiguous as applied to carbon monoxide, other fumes, and substances such as lead paint. Because so many courts have addressed the issue, several approaches have emerged. A number of courts have found the provision ambiguous and have construed it in favor of insured parties in cases that do not involve typical forms of environmental pollution. Some have done so because the clause uses words, such as "dispersal," "discharge," "irritant," and

"contaminant," that are recognizable as terms of art in environmental law. *See, e.g., Nautilus Ins. Co. v. Jabar*, 188 F.3d 27, 30 (1st Cir.1999) (finding the provision ambiguous in a case involving fumes from roofing products, because it uses terms of art and because, if read literally, its scope would be "virtually boundless"); *Kenyon v. Sec. Ins. Co. of Hartford (DPIC Cos.)*, 163 Misc.2d 991, 626 N.Y.S.2d 347, 350 (N.Y.Sup.Ct.1993) (finding the provision ambiguous in a case involving residential carbon monoxide poisoning, because it uses words recognized as terms of art in environmental law), *aff'd*, 206 A.D.2d 980, 616 N.Y.S.2d 133 (N.Y.App.Div.1994). Other courts have found that the clause's general purpose – shielding insurers from the costs of environmental cleanups – prevents it from barring coverage for everyday industrial and residential accidents. *See, e.g., Stoney Run Co. v. Prudential– LMI Commercial Ins. Co.*, 47 F.3d 34, 36– 37 (2d Cir.1995) (finding the provision ambiguous in a case involving residential carbon monoxide poisoning, because it is reasonable to interpret it as applying only to environmental pollution in light of its general purpose); *Sullins v. Allstate Ins. Co.*, 340 Md. 503, 667 A.2d 617, 620 (1995) (finding a similar version of the provision ambiguous as applied to lead paint because it could reasonably be interpreted to apply only to environmental pollution). Some courts have reasoned that the pollution exclusion clause must be ambiguous if so many courts have given it conflicting interpretations. *See, e.g., Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1183 (6th Cir.1999) (finding the provision ambiguous in light of "the disarray that characterize[s] this area of law"); *Motorists Mut. Ins. Co. v. RSJ, Inc.*, 926 S.W.2d 679, 681 (Ky.Ct.App.1996) (finding the provision ambiguous as applied to carbon monoxide poisoning because of its conflicting judicial interpretations and because of its use of "environmental law terms of art").

Other courts have found that a strictly literal reading of the provision could yield absurd results. The Seventh Circuit, in an oft-quoted case, analyzed the problem as follows:

> The terms "irritant" and "contaminant," when viewed in isolation, are virtually boundless, for "there is virtually no substance or chemical in existence that would not irritate or damage some person or property." *Westchester Fire Ins. Co. v. City of Pittsburg*, 768 F.Supp. 1463, 1470 (D.Kan.1991). Without some limiting principle, the pollution exclusion clause would extend far beyond its intended scope, and lead to some absurd results. To take but two simple examples, reading the clause broadly would bar coverage for bodily injuries suffered by one who slips and falls on the spilled contents of a bottle of Drano, and for bodily injury caused by an allergic reaction to chlorine in a public pool. Although Drano and chlorine are both irritants or contaminants that cause, under certain conditions, bodily injury or property damage, one would not ordinarily characterize these events as pollution.

*Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037, 1043 (7th Cir.1992). The court noted that, to avoid absurd results, many courts have taken a "common sense approach" when determining the scope of pollution exclusion clauses, holding that the clauses do not apply to "injuries resulting from everyday activities gone slightly, but not surprisingly, awry." *Id.* at 1043–44 (citations omitted); *see also Am. States Ins. Co. v. Kiger*, 662 N.E.2d 945, 948 (Ind.1996) ("Clearly, [the pollution exclusion] clause cannot be read literally as it would negate virtually all coverage. For example, if a visitor slips on a grease spill then, since grease is a 'chemical,' there would be no insurance coverage. Accordingly, this clause requires interpretation.").

Another group of courts has found the pollution exclusion clause not to preclude coverage for releases of carbon monoxide and other fumes, without finding the clause ambiguous. *See, e.g., Reg'l Bank of Colo., N.A.*, 35 F.3d at 497 (finding that a carbon monoxide exposure incident was not excluded from insurance coverage, regardless of whether the policy's pollution exclusion clause was ambiguous); *W. Alliance Ins. Co. v. Gill*, 426 Mass. 115, 686 N.E.2d 997, 999 (1997) (finding that the clause did not bar coverage for carbon monoxide exposure because its use of environmental law terms of art suggested that it applied to industrial or environmental pollution and holding that the exclusion must be interpreted "in a commonsense manner"); *Thompson v. Temple*, 580 So.2d 1133, 1135 (La.Ct.App.1991) (finding that a similar pollution exclusion clause did not exclude coverage for injuries caused by a leaking heater where the intent of the insurance industry was to exclude coverage for entities that knowingly pollute the environment).

On the other hand, a number of courts have found the pollution exclusion provision to be unambiguous and to bar coverage for incidents like the one underlying this suit. At least one court has specifically found that the clause's language does not reflect the specialized language of environmental law. *See Nat'l Elec. Mfrs. Ass'n*, 162 F.3d at 825 (applying District of Columbia law and finding the provision unambiguous as applied to welders exposed to manganese fumes because it contains "neither technical terms nor terms of art"). In other cases, courts have focused on the clause's broad language, which does not explicitly exempt nonenvironmental damage. *See, e.g., Assicurazioni Generali, S.p.A. v. Neil*, 160 F.3d 997, 1000 (4th Cir.1998) (finding that a similar provision's expansive language applies to carbon monoxide injuries); *Certain Underwriters at Lloyd's London v. C.A. Turner Constr. Co.*, 112 F.3d 184, 188 (5th Cir.1997) (finding a similar provision unambiguous as applied to a welding accident because its plain language does not limit its application to environmental harm); *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 901, 903–04 (3rd Cir.1997) (finding the provision unambiguous in a case involving carbon monoxide poisoning because of its plain language, but finding that, under Pennsylvania law, the insured's reasonable expectations could override the plain meaning); *Essex Ins. Co.*, 863 F.Supp. at 40–41 (finding the provision applicable to carbon monoxide poisoning caused by a Zamboni machine in an ice rink because of its plain language); *Bernhardt v. Hartford Fire Ins. Co.*, 102 Md.App. 45, 648 A.2d 1047, 1050–51 (1994) (finding the provision unambiguous because its language is "quite specific" and people of ordinary intelligence would not conclude that it was inapplicable to tenants' carbon monoxide poisoning).

With so many courts coming to diametrically opposed conclusions about the clause's clarity and meaning, it is difficult to know which line of cases the District of Columbia Court of Appeals would follow. Because the issue is important and likely to recur, and because courts have taken conflicting approaches to the clause's interpretation, we hereby certify the question to the District of Columbia Court of Appeals in accordance with D.C.CODE § 11–723. We append to this certification the relevant portions of the District Court record. In addition, the Clerk of the Court shall forward copies of all or such portion of the record, including the parties' briefs, that the Court of Appeals may require in order to answer the certified question. *See* D.C.CODE § 11–723(d) (2001).