Linda R. TRIPP, Plaintiff,

v.

**UNITED STATES of America, Defendant.**

No. CIV.A. 01–506(EGS).

United States District Court, District of Columbia.

March 31, 2003.

**38**

David Keith Colapinto, Kohn, Kohn & Colapinto, P.C., Washington, DC, for plaintiff.

Elaine Marzeta Lacy, Trial Attorney, Torts Branch, Civil Division, U.S. Department of Justice, Washington, DC, for defendant.

### MEMORANDUM OPINION AND ORDER

SULLIVAN, District Judge.

Presently pending in the above-captioned case is defendant's May 6, 2002 motion for reconsideration of this Court's March 31, 2002 Order denying in part defendant's motion to dismiss for failure to state a claim. Upon initial review of the pleadings, the Court requested additional briefing from the parties with respect to specific questions of District of Columbia tort law raised by defendant's motion. Upon consideration of all of the parties' submissions, and for the following reasons, defendant's motion is hereby **GRANTED IN PART AND DENIED IN PART**.

## I. BACKGROUND

Plaintiff commenced this action against the United States of America pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671–2680, alleging several common law torts arising out of an alleged invasion of her privacy by federal officials who disclosed private information to the *New Yorker* magazine and other news organizations. Specifically, plaintiff alleged that federal officials committed the following five torts: 1) intrusion upon seclusion; 2) publication of private facts; 3) portrayal of plaintiff in a false light; 4) appropriation of likeness; and 5) negligent disclosure of information. The March 31, 2002 Memorandum Opinion and Order defendant asks this Court to reconsider held that plaintiff had stated claims under the FTCA and D.C. law for the torts of appropriation of likeness and negligent disclosure of private information only, and dismissed the remainder of plaintiff's claims.

The circumstances surrounding this case are generally known, and are recited in detail in this Court's March 31, 2002 Memorandum Opinion and Order. Familiarity with the facts is therefore presumed, and only those relevant to plaintiff's remaining claims are outlined here.

As a condition of her federal employment, Ms. Tripp was required to fill out an application for security clearance, including a DOD Personnel Security Questionnaire and the Standard Form 171. In March of 1998, Jane Mayer, a reporter with the *New Yorker* magazine, spoke with Mr. Kenneth Bacon, an Assistant Secre-

tary of Defense, and asked whether Ms. Tripp had answered "no" to the question "have you ever been arrested?" posed on her security clearance application forms. Compl. at ¶ 15. According to plaintiff, Mr. Bacon, with the assistance of Mr. Clifford Bernath, a Deputy Assistant Secretary of Defense, located a copy of Ms. Tripp's application for security clearance. Compl. at ¶ 18. On March 13, 1998 Mr. Bacon telephoned Ms. Mayer at her office, and informed her that Ms. Tripp had reported on her security clearance application form that she had not previously been arrested. Compl. at ¶¶ 21–22. Plaintiff further alleges that later the same day Mr. Bernath disclosed the same information to a fact-checker from the *New Yorker* named Aaron Retica. Compl. at ¶ 21. On March 13, 1998, the *New Yorker* published an article, stating, *inter alia*, that Ms. Tripp had been arrested when she was 19 for grand larceny, but had declared that she had never been arrested on her DOD application for security clearance. Compl. at ¶ 23. Finally, Ms. Tripp alleges that other DOD personnel, including Secretary of Defense William Cohen, made additional disclosures of private information to the press by suggesting on several different occasions that an investigation had been initiated into Ms. Tripp's responses on her security clearance application forms, and if Ms. Tripp was found to have completed the forms as reported, serious consequences would ensue. Compl. at ¶¶ 25–28. Plaintiff maintains that she did not, at any time, authorize anyone to release private information contained in her security clearance application forms to the public. Compl. at ¶ 29.

In its March 31, 2002 Memorandum Opinion and Order, the Court denied defendant's motion to dismiss for failure to state a claim with respect to the misappropriation of likeness and negligence claims. The Court concluded that the government had not met its burden of demonstrating, as a matter of law, why the alleged use of plaintiff's name for the political advantage of federal officials and for the benefit of their political allies, through disclosure of information in her security clearance application forms which could discredit her while she was a key witness before the Independent Counsel on the Clinton/Lewinsky matter, was insufficient to state a claim under a misappropriation of name or likeness theory. The Court also found that the government had not proven as a matter of law that plaintiff could not rely on a duty created by federal law, such as the Privacy Act, to establish her negligence claim.

The Court remains convinced that plaintiff has duly stated a claim for misappropriation of her name. However, it is now persuaded, based on the parties' submissions addressing the pending motion, that the government has now met its burden of establishing that plaintiff has failed to state a claim for negligence under the Federal Tort Claims Act ("FTCA") and the law of the District of Columbia.

## II. Invasion of Privacy—Appropriation of Name or Likeness

█ Plaintiff contends that defendant unlawfully used her name to their benefit, thereby committing the common law tort of appropriation of likeness. Specifically, she alleges that Mr. Bacon and Mr. Bernath's statements to the *New Yorker* and *New York Times* benefitted the defendant, an agency of the Clinton Administration, by, *inter alia*, discrediting her and thus hampering her cooperation with the independent counsel's office and her participation in ongoing litigation relating to the Clinton/Lewinsky matter. The Complaint states, in relevant part:

46. By singling out the Plaintiff, a witness against the White House and the

President, DOD employees appropriated the Plaintiff's name, discrediting her and making her a scapegoat, in order to take advantage of the value associated with Plaintiff's name as a result of her sudden high profile status as a key witness in investigations into White House and/or presidential wrongdoing.

47. DOD employees' appropriation of Plaintiff's name, without license, for personal gain, violates the common law of the District of Columbia and its prohibition against appropriation of one's likeness or name.

Compl. at ¶¶ 46—47.

In its March 31, 2002 Memorandum Opinion and Order, this Court concluded that

[r]ead in the light most favorable to plaintiff, while these pleadings are less than clear, it does appear that plaintiff has stated a claim. Defendant has not met its burden of demonstrating as a matter of law why the alleged use of plaintiff's likeness for the political advantage of federal officials is insufficient to state a claim. Plaintiff's inartfully drafted allegations that DOD officials used her name for their own political benefit and for the benefit of their political allies is therefore sufficient. Defendant's motion to dismiss this claim must be denied.

*Tripp v. United States,* Civ. A. No. 01–506, *slip op.* at 38 (D.D.C. March 31, 2002). The Court reached this conclusion based on the parties' minimal briefing of the law of the District of Columbia, which the Court held, in its March 31, 2002 Memorandum Opinion and Order, governs this action, contrary to defendant's assertion that choice of law principles required the application of the law of Virginia. Based on the parties' submissions addressing defendant's motion for reconsideration, which

more thoroughly brief the law of the District of Columbia describing and applying the common law tort of appropriation, the Court remains persuaded that defendant has failed to meet its burden of demonstrating that plaintiff has failed to state a claim for appropriation as a matter of law.

In its submissions in support of the motion for reconsideration, defendant argues, based on its review of relevant authorities, that, in order for plaintiff to state a claim for appropriation as defined by District of Columbia courts, she must allege that defendant used her name or likeness for its "positive" effect, as would be the case if it had implied or represented that plaintiff supported a product or position in a manner that benefits defendant. Plaintiff counters that there is nothing in the cases cited that requires that a person's name have a positive value for liability to arise for appropriation. It appears that, although defendant's arguments describe the more common circumstances under which the tort of misappropriation arises, a careful reading of the language of relevant authorities suggests that a plaintiff asserting a cause of action for misappropriation of name or likeness need not allege or prove that a defendant relied on the positive aspects of plaintiff's name or reputation. Rather, the Restatement (Second) of Torts, as well as the District of Columbia cases adopting and interpreting it, require only that plaintiff allege that some benefit was derived through defendant's "use" of plaintiff's name, and that the "use" was not "incidental," in order to survive a motion to dismiss.

■ D.C. Courts have adopted the definition of the tort of appropriation of name or likeness set forth in Section 652C of the Restatement (Second) of Torts, which provides that

[o]ne who appropriates to his own use or benefit the name or likeness of another

is subject to liability to the other for invasion of his privacy.

Restatement (Second) of Torts, § 652C; *Vassiliades v. Garfinckel's*, 492 A.2d 580, 587 (D.C.1985). The Comment to this section of the Restatement further elaborates that the interest protected by this proposition is in the nature of an individual property right in the exclusive use of one's own identity *in so far as the use of one's name or likeness may be of benefit to him or her or others. Id.* comment a. [emphasis added]. It goes on to state:

> The common form of invasion of privacy under the rule here stated is the appropriation and use of the plaintiff's name or likeness to advertise the defendant's business or product, or for some similar commercial purpose ... however, *the rule stated is not limited to commercial appropriation.* It applies also when the defendant makes use of the plaintiff's name or likeness for his *own purposes and benefit, even though use is not a commercial one, and even though the benefit sought to be obtained is not a pecuniary one.*

*Id.* comment b [emphasis added]. The types of benefits contemplated include "reputation, prestige, social or commercial standing, public interest or other values of the plaintiff's name or likeness." *Id.* comment c. However, the comment cautions that

> The value of a plaintiff's name is not appropriated by mere mention of it, or by reference to it in connection with legitimate mention of his public activities; nor is the value of his likeness appropriated when it is published for purposes other than taking advantage of his reputation, prestige or other value associated with him for purposes of publicity.

*Id.*

The examples provided by the drafters of the Restatement to illustrate uncommon situations in which liability for appropriation may lie include impersonation of another to obtain the value associated with being known as someone's wife, obtaining credit based on another's good reputation, filing a suit in another's name, or representing that the person impersonated supports a particular political position. The Restatement example which most closely approximates the facts in this case is as follows:

> A writes and publishes an autobiography in which at several points, he names B as one of his friends ... [there is no] invasion of B's privacy.

However, A's disclosure of A & B's friendship in this context is substantially different from mentioning plaintiff's name in the context of disclosing one of her responses on a security clearance questionnaire, particularly given the larger context in which the plaintiff's name was used and in which the disclosure was made in this case. It is clear that defendant's mention of Ms. Tripp's name under the circumstances here alleged was not a reference to it in connection with legitimate mention of [her] public activities, as one's responses on a security clearance application form are by no means a "public activity." Restatement (Second) of Torts, § 652C comment c. It is also clear that there was some "other value associated with" Ms. Tripp's name at the time defendant used it in connection with statements to the press. *Id.*

No District of Columbia court or federal case interpreting D.C. law in this area has found liability for misappropriation of name or likeness under circumstances remotely approaching those alleged in this case, begging the question of whether it would be appropriate for a federal court to extend the District's law with respect to the tort of misappropriation to reach facts such as these. *See Nationwide Mutual*

*Ins. Co. v. Richardson,* 270 F.3d 948, 950 (D.C.Cir.2001) ("a federal court . . . should normally decline to speculate on . . . a question of local doctrine."). In order to resolve this question, the Court must seek to discern, if possible, how the D.C. Court of Appeals would rule on the issue. *See Nationwide Mutual Ins. Co. v. Richardson,* 270 F.3d at 954, 956. Neither D.C. case law on misappropriation nor federal case law interpreting it provide much guidance in this regard. Nevertheless, it is clear that where the D.C. Court of Appeals has denied plaintiffs relief on a misappropriation of name or likeness theory, it has relied heavily on the lack of "value" associated with mention or use of the plaintiff's name or likeness.

For instance, in the leading D.C. case on misappropriation, the D.C. Court of Appeals held that a woman whose plastic surgeon published "before" and "after" photographs of her in a department store presentation and on a television program failed to state a claim for misappropriation of name or likeness under the Restatement rule. In so doing, the Court stated that

Incidental use of name or likeness or publication for a purpose other than taking advantage of a person's reputation or the value associated with his name will not result in actionable appropriation. While the record clearly establishes that appellees used Mrs. Vassiliades' photographs for their own benefit, *Mrs. Vassiliades has not shown there was a public interest or other value in her likeness.* Therefore, appellees' use of Mrs. Vassiliades' photographs was not an appropriation for commercial benefit within the meaning of this tort.

*Vassiliades,* 492 A.2d at 592 [emphasis added].

Subsequent interpretations of the D.C. law of the tort of misappropriation have been conducted almost exclusively by the federal courts. In *Pearce v. E.F. Hutton Group, Inc.,* the U.S. District Court for the District of Columbia considered a claim brought by an employee of E.F. Hutton Group, who claimed misappropriation on the basis of a report, prepared at his employer's request, mentioning his name as one of the employees responsible for unlawful practices which had led to the corporation's criminal conviction. *Pearce v. E.F. Hutton Group, Inc.,* 664 F.Supp. 1490, 1493–94 (D.D.C.1987). The District Court held that the plaintiff had failed to state a claim for misappropriation, reasoning that

[t]he premise for this claim is that defendant used plaintiff's name and identity to gain substantial pecuniary benefit by having him serve as a scapegoat for Hutton's corporate abuses. Plaintiff's theory is plainly implausible. There is no evidence that plaintiff's name was of any particular value or that it was included in the Hutton report to take advantage of plaintiff's reputation or the value associated with his name . . . . The essence of a misappropriation of name action is that the defendant has used another's name to take advantage of some value associated with it—not merely for informational purposes . . . In the case at bar, plaintiff has presented no evidence that defendants' use of his name was for anything other than informational purposes.

*Id.* at 1500. Although plaintiff's complaint similarly alleges that defendant appropriated her name to discredit her and make her a "scapegoat," this case appears to differ from *Pearce* given that, at the time defendant published her name, plaintiff was not a previously unknown employee of a company, but, as she alleges, had a "high profile status" as a key witness in investigations into presidential matters. *See* Compl. ¶ 46. It appears that this differ-

ence is significant enough to give plaintiff's name the "value" to defendant necessary to serve as a predicate for a misappropriation claim and remove this case from the ambit of those in which persons' names were used for "incidental" or "informational" purposes only.

In *Barnako v. Foto Kirsch, Ltd.*, a case somewhat more factually analogous to that before this Court, a member of the Occupational Safety and Health Review Commission whose photographic portrait was subsequently used by a photographer in the studio's promotional materials and advertisements claimed misappropriation of his likeness. As in *Pearce*, the District Court dismissed plaintiff's claim for lack of "value" associated with his likeness. *Barnako v. Foto Kirsch, Ltd.*, Civ. A. No. 86–1700, 1987 WL 10230 (D.D.C. April 16, 1987) In so doing, the District Court held that

> it is not enough to demonstrate that defendant profited directly from unauthorized use of the plaintiff's photograph; to state a cause of action, the plaintiff must allege, and later prove, that the defendant's commercial benefit was derived from the identity of the plaintiff and the value or reputation which the public associates with that identity.

*Id.* at *2. The District Court relied heavily on the fact that, notwithstanding his prestigious office, plaintiff did not allege that any person other than himself recognized his photograph in the materials, and therefore had failed to allege any "value" garnered by the defendant from its use. *Id.*

Finally, in *Lane v. Random House*, plaintiff, who was known for his theories regarding President Kennedy's assassination, claimed misappropriation based on the use of his name and a quote of his in an advertisement for a book about the assassination. *Lane v. Random House, Inc.*, 985 F.Supp. 141, 144–45 (D.D.C.1995). The District Court dismissed his claim on grounds not applicable here, because those charged with misappropriation of plaintiff's name in this case are not publishers. *Id.* at 146 ("Because Lane's picture and quotation are newsworthy and incidentally related to a protected speech product, they cannot form the basis for a successful misappropriation claim. Random House may invoke either the newsworthiness privilege or the incidental use privilege.").

Plaintiff's considerable notoriety at the time defendant allegedly "used" Ms. Tripp's name when disclosing to members of the media her response to a particular question on her security clearance form distinguishes this case from those failing to find the existence of a misappropriation claim. Moreover the rationale underlying the authorities canvassed herein suggests that the D.C. Court of Appeals would likely find that plaintiff has stated a claim for misappropriation tort as that cause of action has emerged under D.C. law. While it is not the province of this Court to stretch a cause of action under local law beyond recognition, where it believes it can ascertain how the highest local court would likely rule, application of existing law to new factual circumstances is appropriate. *See Nationwide Mutual Ins. Co. v. Richardson*, 270 F.3d at 954, 956; *Daskalea v. District of Columbia*, 227 F.3d 433, 447 (D.C.Cir.2000); *Haddon v. United States*, 68 F.3d 1420, 1425–26 (D.C.Cir.1995). Consistent with the law governing the adjudication of motions to dismiss, at this stage of the proceedings, the Court will give plaintiff the benefit of any doubt as to whether she can prove facts entitling her to relief under District of Columbia law for misappropriation of her name.[1]

1. The Court will not grant a motion to dismiss for failure to state a claim pursuant to Federal

## III. Negligent Disclosure of Private Information

■ It is axiomatic that, in order to state a claim for negligence, plaintiff must allege a duty of care, breach of that duty, and injury proximately caused by that breach. *See, e.g., Bullock v. National City Mortgage Co.*, 735 A.2d 949, 952 (D.C. 1999). The Court's March 2002 order stated that defendant had not met its burden of demonstrating that duties under federal laws, such as the Federal Privacy Act, could not form the basis for a negligence claim under D.C. state law. *Tripp v. United States*, Civ. A. No. 01–506, *slip op.* at 38 (D.D.C. March 31, 2002). In its submissions in support of reconsideration, defendant has brought to the Court's attention authority from this Circuit which is conclusive on this point, holding that duties under federal statutes cannot serve as the basis for negligence actions under the Federal Tort Claims Act ("FTCA") unless there is an analogous duty imposed on private citizens by local law. *See Art Metal–U.S.A. v. United States*, 753 F.2d 1151, 1156, n. 10, 1157 (D.C.Cir.1985). Furthermore, the Court is persuaded that no duty analogous to that created by the Privacy Act exists under D.C. law which would preclude a private employer from disclosing the type of information defendant is alleged to have disclosed here. These conclusions are dispositive, and accordingly, plaintiff's negligence claim must be dismissed.

The FTCA provides that the U.S. government waives sovereign immunity under that Act for suits by private citizens sounding in tort only "under circumstances where the United States, if a private person, would be liable to claimant *in accordance with the law of the place where the act or omission occurred.*" 28 U.S.C. § 1346(b) [emphasis added]. In *Art Metal–U.S.A.*, the D.C. Circuit conclusively interpreted this language to mean that a federal statute which provides for a private right of action against the government cannot, without more, create a duty on the part of the federal government giving rise to tort liability under the FTCA. *Art Metal–U.S.A. v. United States*, 753 F.2d at 1156, n. 10., 1157. In so doing, the Circuit reiterated the "well-established principle that the violation of a federal statute or regulation by government officials does not of itself create a cause of action under the FTCA." *Id.* at 1157. Furthermore, it noted that "negligent performance of (or failure to perform) duties embodied in federal statutes and regulations may give rise to a claim under the FTCA ... *only* if there are analogous duties under local tort law." *Id.* at 1157 [emphasis in original]; [2] *see also Sterling v. United States*, 798 F.Supp. 47, 48 (D.D.C.1992) (plaintiff claiming improper release of information identifying him as a confidential informant by federal

---

Rule of Civil Procedure 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C.Cir. 1994). Accordingly, at this stage of the proceedings, the Court accepts as true all of the complaint's factual allegations. *See Does v. United States Dep't of Justice*, 753 F.2d 1092, 1102 (D.C.Cir.1985). Plaintiff is entitled to "the benefit of all inferences that can be de-

rived from the facts alleged." *Kowal*, 16 F.3d at 1276.

**2.** Where an analogous duty is created under local tort law, federal statutes and regulations "may nevertheless be important in determining whether the government may be liable under the FTCA" by establishing that the government has assumed a duty of care, or by setting forth the applicable standard of care. *Art Metal–U.S.A. v. United States*, 753 F.2d at 1158–1159.

government cannot state a claim where "[t]here is no allegation of any violation of underlying state law other than a vague reference to 'negligence.'").

Accordingly, "[t]he pertinent inquiry is whether the duties set forth in federal law are analogous to those imposed under local tort law." *Id.* at 1158. This in turn requires the Court to "ask whether a cause of action exists under District of Columbia law for the injuries [plaintiff] alleges." *Id.* at 1159. Unless plaintiff can establish a duty under District law to keep employee records such as security clearance application forms confidential, she cannot state a claim for negligence under the FTCA. *Sterling v. United States,* 798 F.Supp. at 48.

Plaintiff attempts to characterize the government conduct at issue as part of the performance of a unique government function in order to bring this case within a line of authority in which the federal government's activities "are not usually performed by private persons." In such cases, courts have looked to federal regulations or the liability of municipal entities "under like circumstances" to ascertain whether the federal government owed a plaintiff a duty and whether a breach occurred. *See Hetzel v. United States,* 43 F.3d 1500, 1503–04 (D.C.Cir.1995); *Art Metal–U.S.A., Inc. v. United States,* 753 F.2d at 1157–59; *Louie v. United States,* 776 F.2d 819, 825 (9th Cir.1985); *Canadian Transport Co. v. United States,* 663 F.2d 1081, 1091 (D.C.Cir.1980). However, as defendant correctly points out, the rele-

vant conduct here is the release of information contained on an employment-related form, for which a counterpart in the private sector is easily imagined. In fact, it is entirely within the realm of possibility that a private employer performing a contract for the Department of Defense would both require its employees to complete security clearance applications, and release information contained in those forms to the public. The conduct of which plaintiff complains is not, as plaintiff contends, intrinsic to the performance of the security clearance itself, which is admittedly a uniquely governmental function. As a result, plaintiff cannot escape the requirement that she point to a duty analogous to that created by the federal Privacy Act under local law to state a claim upon which relief can be granted.[3]

Plaintiff next contends that, in the event the Court finds that she must demonstrate the existence of an analogous duty under local law, both D.C. statutes and common law create a duty on the part of employers to maintain the confidentiality of employee records, thereby preserving her FTCA negligence claim. Pl.'s Opp'n at 19–20. In support of this argument, plaintiff cites to a number of D.C. statutes which prohibit government employers from disclosing employees' personnel, medical, or other employment records, and guaranteeing D.C. government employees' a right to privacy in their personnel records. *See, e.g.,* D.C.Code Ann. § 1–615.58(2) and (6); D.C.Code Ann. § 1–631.01. However, because "the United States must be treated

---

**3.** Plaintiff's efforts to twist the D.C. Circuit's holding in *Kugel v. United States* do not change this result. Pl.'s Opp'n at 33–35 (arguing that because the Circuit did not reject the claim in *Kugel* on the grounds of failure to establish an analogous duty under local law, federal statutes can, on their own, create duties for purposes of FTCA liability); *See Kugel v. United States,* 947 F.2d 1504, 1507–

08 (D.C.Cir.1991) (holding that internal Department of Justice guidelines do not create a duty in favor of the general public such that their violation gives rise to FTCA liability; also holding "[u]nder the FTCA, the alleged tort must create liability under the law of the state where the alleged acts or omissions occurred.").

as a private person for purposes of our analysis, even if a different rule would apply to [local] governmental entities," plaintiff's reliance on statutes imposing duties on local government employers is misplaced. *See Ravell v. United States,* 22 F.3d 960, 961 (9th Cir.1994). Similarly, plaintiff's citation to whistleblower and anti-retaliation statutes protecting D.C. government employees, as well as the "Duncan Ordinance," under which D.C. Citizens are to be "reasonably and adequately protected" from misuse of their arrest records, as sources of a duty under local law analogous to that created by the Privacy Act is inapposite. *See* D.C.Code Ann. §§ 1–301.43, 2–1402.11, 2–1402.61, 22–704, 1–1106.1; Pl.'s Opp'n at 24 (citing *Spock v. District of Columbia,* 283 A.2d 14, 19 (D.C.1971)).

Plaintiff also turns to D.C. case law recognizing a tort of breach of confidential relationship, and thus a duty to preserve the confidentiality of fiduciary relationships, as a source of the requisite analogous duty under local law. *See, e.g. Vassiliades,* 492 A.2d at 592; *see also Street v. Hedgepath,* 607 A.2d 1238, 1246 (D.C.1992) ("The tort of breach of a confidential relationship consists of the " 'unconsented, unprivileged disclosure to a third party of nonpublic information that the defendant has learned within a confidential relationship.' "). Asserting that the employer-employee relationship is a confidential one, plaintiff argues that the tort of breach of confidential relationship creates duties of preservation of confidentiality of information learned over the course of the employment relationship analogous to those created by the Privacy Act.

However, the D.C. Court of Appeals has never held that the employment relationship is a confidential one. Moreover, where a plaintiff alleged that his employer had wrongfully disclosed information about him obtained during the course of a sexual harassment investigation, D.C.'s highest court flatly rejected the proposition that every contract of employment includes an implied covenant of confidentiality, good faith, and fair dealing. *See Kerrigan v. Britches of Georgetowne,* 705 A.2d 624, 625–27 (D.C.1997).[4] Cognizant of its role as a federal court applying local law, this Court declines to extend the District's law of confidential relationships to include the employer-employee relationship without some indication that the D.C. Court of Appeals would be inclined to do the same were it presented with an appropriate situation. *See Nationwide Mutual Ins. Co. v. Richardson,* 270 F.3d at 954, 956; *Daskalea v. District of Columbia,* 227 F.3d at 447; *Haddon v. United States,* 68 F.3d at 1425–26.

Finally, plaintiff most recently advanced a new theory on which to base her negligence claim, namely "negligence for alleged breach of contractual duties." *See Ehrenhaft v. Malcolm Price, Inc.,* 483 A.2d 1192, 1194 (D.C.1984)(recognizing a cause of action sounding in both contract and tort where architect was alleged to have committed "malpractice" in connection

---

4. Plaintiff seeks to evade the effect of *Kerrigan* by emphasizing that the D.C. Court of appeals could not apply its general rule that "District of Columbia law recognizes an implied covenant of good faith and fair dealing in every contract" in that case because it did not find the existence of a contract. *See Paul v. Howard Univ.,* 754 A.2d 297, 310 (D.C.2000); *Kerrigan v. Britches of Georgetowne,* 705 A.2d 624, 626–27 ("by definition Kerrigan—as an employee at will, not under contract—has no basis for claiming a breach of a 'covenant' "). However, as discussed *infra,* plaintiff also has failed to establish the existence of a contract between herself and the defendant. Therefore, any claim premised on the existence of an employer's implied duty of confidentiality, good faith, and fair dealing is equally unavailable to her.

with the construction of a home); Pl.'s Supp. Brief in Opp'n to Def.'s Mot. for Reconsideration ("Pl.'s Supp. Brief") at 10–14. Plaintiff posits that, in light of the District's recognition of a negligent breach of contract cause of action, a private employer could be held liable for violating the terms of an express contract with an employee, or one implied from a personnel or policy manual, which requires the employer to keep certain information confidential. Pl.'s Supp. Brief at 11; *see Beebe v. Washington Metropolitan Area Transit Authority,* 129 F.3d 1283, 1290 (D.C.Cir.1997); *Sisco v. GSA Nat. Capital Federal Credit Union,* 689 A.2d 52, 55 (D.C.1997) ("assurances by an employer in a personnel or policy manual distributed to all employees that are clear enough in limiting the right to terminate to specific causes or events will overcome the presumption of at-will employment. Such a promise, if supported by adequate consideration, creates a triable issue of fact as to the existence of an implied contract for continued employment."). Under such circumstances, plaintiff contends that she need not establish the existence of a confidential relationship between herself and her employer for her claim to survive a motion to dismiss. Pl.'s Supp. Brief at 12.

However, rather than pointing the Court to an express or implied contract of employment, plaintiff relies only on the "binding and specific" regulations governing the DOD's release of information contained in a Privacy Act "system of records" as the source of defendant's alleged contractual obligations to her. *See* Pl.'s Supp. Brief at 12. The clause appearing at the end of one of the security clearance application forms,[5] also cited by plaintiff as an acknowledgment of defendant's contractual obligations, in fact simply refers to the Privacy Act and memorializes plaintiff's consent to disclosure of the contents of the form to certain parties for certain purposes for no more than one year. While creative, plaintiff's argument has no legal basis, and represents another doomed effort to hold the defendant liable in tort for alleged violation of its obligations under the federal Privacy Act.

Finally, plaintiff also contends that duties analogous to those created by the Privacy Act are embodied in the tort of negligent supervision, recognized under local law. *See* Pl.'s Opp'n at 28–30. However, the Court would first have to recognize a duty breached by the those employees of defendant who are alleged to have been negligently supervised before it could turn to the question of whether a duty of supervision exists under local law for purposes of assessing her FTCA claim. Having concluded that no such duty exists under the law of the District of Columbia, the

---

**5.** The clause in question provides:
In accordance with the Privacy Act of 1974, I have been provided with a copy of a statement advising me that certain information is required to assist the Department of Defense in making a security determination concerning me and that execution of this form is voluntary.
I hereby authorize and consent to the release of information and records bearing on my personal history, academic record, job performance and arrests and convictions, if any, to Special Agents of the Department of Defense. The information will be used for the purpose of determining my qualifications for employment with the Federal Government, service in the Armed Forces, or access to classified information. (*Strike clauses not applicable*)
This authorization is valid for one year after my signing. Upon request, a copy of this signed statement may be furnished to the school, present or former employer or former landlord, criminal justice agency, or other person furnishing such information or record.
Pl.'s Supp. Brief, Ex. 2 at 3.

Court need not reach plaintiff's negligent supervision claim.

## IV. CONCLUSION

Upon careful consideration of defendant's motion, the response and reply thereto, the supplemental briefs filed at the Court's request, and the governing statutory and case law, for the reasons stated herein, it is by the Court hereby

**ORDERED** that defendant's motion for reconsideration [36–1] is **GRANTED IN PART AND DENIED IN PART;** and it is

**FURTHER ORDERED** that plaintiff's negligence claim is hereby **DISMISSED.**