**CAMBRIDGE HOLDINGS GROUP, INC. et al., Plaintiffs,**

v.

**FEDERAL INSURANCE CO., et al., Defendants.**

**No. 01–2192 (RJL).**

United States District Court, District of Columbia.

July 7, 2004.

Thomas Angelo Mauro, Washington, DC, for Plaintiffs.

Edward Graham Gallagher, Wickwire Gavin, P.C., Vienna, VA, Scott A. Sinder, Collier Shannon Scott, PLLC, Washington, DC, for Defendants.

### MEMORANDUM OPINION AND ORDER

LEON, District Judge.

Before the Court are the defendants' motions to dismiss the plaintiff's complaint for failure to state a claim under the Federal Rule of Civil Procedure 12(b)(6). Defendants Federal Insurance Co. d/b/a Chubb Group of Insurance Companies ("Chubb") and Babb, Inc. ("Babb") separately move for dismissal of the contract and tort claims alleged in this action by Cambridge Holdings Group, Inc. and Cambridge Capital Group, Inc. (collectively referred to as "Cambridge" or "the plaintiff"). Chubb moves for dismissal of Counts I, II, and IV of the complaint on the grounds that the plaintiff has failed to allege that Chubb breached any contract or that it committed any tort related to such a breach. Similarly, Babb moves for dismissal of Counts I, II, III, and IV of the complaint on the grounds that the plaintiff has failed to allege that Babb was a party to any contract that was breached or that it committed any related tort. For the following reasons, the Court GRANTS defendant Chubb's motion to dismiss Counts I, II, and IV. The Court also GRANTS defendant Babb's motion to dismiss Counts I, II, III, and IV.

### Factual Background

The claims in this diversity action arise from an escrow agreement and a fidelity bond insurance agreement that were executed as a part of a loan transaction to finance the purchase of thoroughbred racetracks. The plaintiff, Cambridge, is a financial service company engaged in commercial lending with real estate and assets as collateral. Compl. ¶ 8. The plaintiff alleges that at a September 22, 1999 real estate closing, held in Washington, D.C., it loaned three borrowers, Bradford L. Huebner, Edward R. Showalter, and Star Entertainment Group, Inc.,[1] the sum of

---

1. These three borrowers are not parties to the current action. On May 8, 2002, Bradford L. Huebner moved to intervene as a plaintiff in the case. On November 21, 2002, after a hearing on the motion to intervene, U.S. Magistrate Judge Deborah Robinson denied Huebner leave to intervene.

$2,100,000 as financing for the acquisition of several racetracks. Compl. ¶ 9.

The plaintiff alleges that as a part of this loan transaction, the Florida law firm of Altschul, Landy, and Collier, P.A. ("the Law Firm"), also a defendant in this case, was to maintain $1,525,000 of the loan proceeds in an escrow account, pursuant to a Guaranty Deposit Escrow Agreement, dated September 22, 1999 ("the Escrow Agreement"). Compl. ¶ 10. The parties to the Escrow Agreement were the three borrowers, the Law Firm, and the plaintiff. Compl., Ex. A. According to the plaintiff, the Law Firm was to serve as an escrow agent and was required under the Escrow Agreement to disburse the escrow funds only upon the specific, written instructions of the plaintiff. Compl. ¶ 12.

The plaintiff further alleges that the loan transaction and the Escrow Agreement were made in reliance on the requirement that the Law Firm secure a fidelity bond with a minimum principal amount of $2,000,000, payable to the plaintiff as a "loss payee" in the event of misfeasance by the Law Firm with regard to the escrow funds. Compl. ¶ 15; Ex. A at § 6(e). The plaintiff claims that it instructed defendant Chubb, an insurance company, through its agent, defendant Babb, with regard to the type and scope of coverage and the identities of the insured and the loss payee. Compl. ¶ 16.

On September 18, 1999, Babb issued an insurance binder for Policy No 8158–00–16 on behalf of Chubb, with coverage in the amount of $2,500,000. Compl. ¶ 16. The insurance binder lists the Law Firm as the "insured" and the plaintiff as a "loss payee." Compl., ¶ 17, Ex. B. The actual policy, which replaced the binder, was subsequently issued on November 16, 1999 ("Fidelity Bond insurance agreement"). Compl. ¶ 19; Chubb Mot. to Dismiss, Ex. A. According to the plaintiff, the agree-

ment was delivered in Washington, D.C. Compl. ¶ 7.

Under the Fidelity Bond insurance agreement, the "insured" is the Law Firm. Chubb Mot. to Dismiss, Ex. A. The Fidelity Bond insurance agreement provides that Chubb shall be liable for "direct losses of Money, Securities and other property caused by Theft or forgery by any identifiable partner(s) or Employee(s) of an Insured acting alone or in collusion with others." *Id.* at § 1.1. Chubb's liability under the agreement applies to "Money, Securities and other property" that is owned by the Law Firm or owned by others, held by the Law Firm or for which the Law Firm is legally liable. *Id.* at § 3.1. Furthermore, the agreement provides that "[o]nly the first named Insured shall have any right to claim, adjust, receive or enforce payment of any loss and shall be deemed to be the sole agent of others for the purposes and for the giving or receiving of any notice or proof required to be given by the terms hereof...[a]ll losses and other payments if any, payable by [Chubb], shall be payable to the first named Insured..." *Id.* at § 3.2.

According to the plaintiff, it learned in May 2000 that the Law Firm, allegedly acting together with Babb, had prepared documentation for the escrow funds to be withdrawn and moved to a bank in either Canada or Lebanon. Compl. ¶ 20. Thereafter, the plaintiff claims that it made numerous written demands on the Law Firm for repayment of the escrow funds. However, the Law Firm allegedly refused to repay the escrow funds and also refused to make a demand on Chubb for payment under the Fidelity Bond insurance agreement. *Id.* at ¶¶ 21–22. The plaintiff further claims that Chubb refuses to process, discuss, or pay the plaintiff the loss it suffered as a result of the actions of the Law Firm. *Id.* at ¶ 24.

Based on these allegations, the plaintiff asserts breach of contract (Count I), breach of good faith and fair dealing (Count II), and punitive damages (Count IV) claims against Babb and Chubb. The plaintiff also asserts a claim of tortious interference with contractual relations (Count III) against Babb.[2] Babb moves to dismiss Counts I, II, III, and IV on the grounds that it was not a party to the Escrow Agreement or the Fidelity Bond insurance agreement. Babb asserts that in the absence of a valid agreement to which Babb was a party, the plaintiff cannot state a claim in contract or tort. In a separate motion to dismiss, Chubb argues that it that there has been no breach of the Fidelity Bond insurance agreement because its obligations were to insure the Law Firm against losses caused by its partners or employees, and the Law Firm was the only party under the contract who could assert a claim for coverage. As the policy did not insure against a loss caused by malfeasance by the Law Firm itself and the Law Firm has not made a claim under the policy, Chubb's failure to pay the plaintiff for its losses cannot be the grounds for claims in contract or tort. For the following reasons, the Court finds that the plaintiff has failed to state a claim in contract or tort against both Babb and Chubb.

## Discussion

### I. Standard of Review

The Court will only dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C.Cir.1994). However,

even if the Court accepts as true all of the factual allegations set forth in the complaint, *Doe v. United States Dept. of Justice*, 753 F.2d 1092, 1102 (D.C.Cir.1985), and construes the complaint liberally in favor of the plaintiff, *Schuler v. United States*, 617 F.2d 605, 608 (D.C.Cir.1979), it "need not accept inferences drawn by [the] plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Kowal*, 16 F.3d at 1276.

■■■■ A federal court sitting in diversity will apply the choice of law rules of the forum state or district, *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), and under District of Columbia law, insurance contracts are governed by the substantive law of the state in which the policy is delivered. *Liberty Mutual Insurance Co. v. Travelers Indemnity Co.*, 78 F.3d 639, 642 (D.C.Cir.1996) (citing *Levin v. John Hancock Mut. Life Ins. Co.*, 41 A.2d 841, 843 (D.C.1945)). The plaintiff has alleged that the Fidelity Bond insurance agreement was delivered in the District of Columbia and the Court will thus apply the law of this district and construe the terms of this insurance agreement "as a matter of law." *Spears v. Nationwide Mutual Insurance Co.*, 254 F.Supp.2d 144, 152 (D.D.C.2003); *John Akridge Co. v. Travelers Companies*, 876 F.Supp. 1, 1–2 (D.D.C. 1995). Accordingly, if the agreement is unambiguous, the Court will apply "the plain language used and should not consider extrinsic evidence as to how to interpret the policy." *Id.* The parties appear to agree that District of Columbia law also governs the interpretation of the Escrow Agreement.

---

**2.** The plaintiff asserts a claim for injunctive relief against the Law Firm in Count V of the complaint. However, the Law Firm has nei-ther filed an answer to the complaint nor presented a motion to dismiss the claim.

## II. Breach of Contract (Count I)

] Count I of the complaint alleges that Babb assisted the Law Firm in breaching the Escrow Agreement and alleges that Chubb breached the Fidelity Bond insurance agreement. Compl. ¶¶ 28–29. Under District of Columbia law, "for an enforceable agreement to exist...there must be both (1) agreement as to all material terms and (2) intention of the parties to be bound." *Georgetown Entertainment Corp. v. District of Columbia,* 496 A.2d 587, 590 (D.C.1985). In the absence of a valid agreement, a breach of contract claim cannot be sustained. *Virtual Defense and Development Int'l, Inc. v. Republic of Moldova,* 133 F.Supp.2d 9, 19 (D.D.C.2001).

Babb argues in its motion to dismiss that the breach of contract must fail because the plaintiff has not alleged "a single contract to which defendant Babb was a party." Babb Mot. to Dismiss 2. Babb argues that the plaintiff references only two contracts in its complaint, the Escrow Agreement and the Fidelity Bond insurance agreement, and Babb is not a party to either. *Id.* at 2–3. The plaintiff responds and alleges that Babb undertook to provide the fidelity bond and issued the binder contract, as an authorized representative of Chubb. Pl. Opp. 9.

 The Court finds that the plaintiff has failed to state a claim for breach of contract against Babb. Although the plaintiff vaguely alleges in its complaint that the Law Firm engaged in theft and dishonesty "with the assistance" of Babb, Compl. ¶ 28, there is no allegation that Babb was a party to the Escrow Agreement and the copy of the agreement presented by the plaintiff, Compl., Ex. A, makes clear that the only parties to that agreement were the borrowers, the Law Firm, and the plaintiff. Moreover, to the extent the plaintiff was attempting to argue that Babb was a party to the binder contract and somehow breached that contract, this allegation is flatly contradicted by the plaintiff's own exhibits, which indicate that the binder contract was replaced by the Fidelity Bond insurance agreement, which the plaintiff acknowledges was issued in November 1999. Pl. Opp. Ex. C (reverse side of binder contract, stating that "[t]his binder is cancelled when replaced by a policy."). Finally, the plaintiff does not allege that Babb was a party to any implied contract. *Paul v. Howard University,* 754 A.2d 297, 311 (D.C.2000). Accordingly, the Court finds that the breach of contract claim against Babb should be dismissed with prejudice because no set of facts alleged by the plaintiff would entitle it to relief.

Chubb moves for dismissal of the breach of contract claim because the plaintiff has failed to allege a breach of the Fidelity Bond insurance agreement. According to Chubb, the agreement expressly provides that only the insured, the Law Firm, can submit a claim under the policy for loss of the escrow funds. Chubb Mot. to Dismiss 3. The plaintiff is a "loss payee" and thus is only entitled to benefits owed to the insured. *Id.* at 5. Chubb also argues that the Fidelity Bond insurance agreement only protects the Law Firm from loss caused by theft or forgery committed by its partners or employees, and the plaintiff is not alleging that the firm suffered any loss. *Id.* at 4. The plaintiff concedes that it is a "loss payee" under the agreement, but responds that under the "third-party beneficiary" rule, when a promisor engages to the promisee to render some performance to a third party, the third party is treated as a party to the contract. Pl. Opp. 11. The plaintiff thus asserts that because the Fidelity Bond insurance agreement was entered into for its benefit, it may sue for a breach. *Id.* at 12 (citing *Western Union Telegraph Co. v. Massman Construction Co.,* 402 A.2d 1275, 1277 (D.C.1979)).

 The Court agrees that under cases such as *Western Union Telegraph Co.*, a party who is not named in an agreement may still sue to enforce the provisions of an agreement if that agreement was entered into for its benefit. However, the plaintiff appears to confuse status as a third-party beneficiary with reformation of the terms of the agreement. Pl. Opp. 12 ("Plaintiffs were the sole and express beneficiaries of the Binder and Insurance contracts...[p]lainly, Plaintiffs may make a claim under the policies..."). Even if the plaintiff had plead the necessary elements to be considered a proper third-party beneficiary, it could only sue to *enforce the provisions of the agreement. Western Union Telegraph Co.*, 402 A.2d at 1277; *see also Trans Bay Engineers and Builders, Inc. v. Hills*, 551 F.2d 370, 378 (D.C.Cir. 1976) (third-party beneficiary "cannot accept the benefits and avoid the burdens or limitations of a contract"). In other words, the plaintiff would still need to plead a *breach* of the terms of the agreement—an agreement it concedes plainly names it as a loss payee and provides that only the insured may recover for a loss. Under District of Columbia law, a "loss payee" can only recover to the extent that the insured was entitled to recover and then only consistent with the terms of the policy. *See Zitelman v. Metropolitan Insurance Agency*, 482 A.2d 426, 427 (D.C. 1984); *Franklin Investment Co. v. American Mutual Insurance Co.*, 256 A.2d 620, 622 (D.C.1969). Accordingly, even upon consideration of the plaintiff's third-party beneficiary argument and viewing the facts in the light most favorable to the plaintiff, the Court finds that the plaintiff fails to state a claim for breach of contract where the express terms of the policy provide that only the insured is entitled to recover for any covered loss. The Court thus dismisses the plaintiff's breach of contract claim (Count I) against both Babb and Chubb.

## III. Breach of Good Faith and Fair Dealing (Count II)

 Count II alleges that Babb and Chubb have breached their duties of good faith and fair dealing. Under District of Columbia law, "all contracts contain an implied duty of good faith and fair dealing, which means that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Paul v. Howard University*, 754 A.2d 297, 310–11 (D.C.2000) (citing *Hais v. Smith*, 547 A.2d 986, 987 (D.C.1988)); *see also Messina v. Nationwide Mutual Insurance Co.*, 998 F.2d 2, 4 (D.C.Cir.1993) ("*Messina*"). The plaintiff alleges that Chubb's refusal to process, discuss, or pay its claim for the loss suffered as a result of the Law Firm's malfeasance is a violation of Chubb's duty of fair dealing under the Fidelity Bond insurance agreement. Compl. ¶ 32. The plaintiff alleges that Babb is liable "jointly and severally" under this count of the complaint. *Id.* at ¶ 33.

Babb responds that it cannot be liable for a breach of good faith and fair dealing if it was not a party to the Fidelity Bond insurance agreement and had no ability to influence the actions of Chubb in allegedly refusing to pay the plaintiff's claim. Babb Mot. to Dismiss 3–4. Chubb in turn argues that it did not breach the Fidelity Bond insurance agreement and thus cannot be liable for any breach of good faith and fair dealing. Moreover, Chubb asserts that to the extent the plaintiff is attempting to allege a claim for bad faith refusal to pay insurance benefits, such a claim fails because this cause of action is not recognized under the law of the District of Columbia. Chubb Mot. to Dismiss 6 (citing *Messina*, 998 F.2d at 4). The plaintiff responds that "[d]iscovery will demonstrate the extent of the bad faith conduct" and "[t]he Court may sort out the

legal consequences thereof at that time." Pl. Opp. 14.

██ The Court finds that the plaintiff fails to state a claim for a breach of good faith and fair dealing against either Babb or Chubb. First, the plaintiff has not alleged that Babb was a party to any express or implied agreement that could give rise to a breach of good faith and fair dealing. Moreover, the plaintiff has not alleged any factual or legal basis for Babb to be liable as an agent for a breach of good faith and fair dealing by Chubb.

██ Second, the plaintiff cannot state a claim for breach of good faith and fair dealing against Chubb because the plaintiff has not alleged a set of facts under which a denial of benefits under the Fidelity Bond insurance agreement would injure or destroy its rights *under that agreement.* The plaintiff does not dispute that express language of the agreement provides that only the Law Firm could directly place a claim under the policy.

Moreover, even if the District of Columbia recognized a claim for bad faith refusal to pay insurance benefits, as at least one district court in this Circuit has, see *Washington v. Group Hospitalization, Inc.,* 585 F.Supp. 517, 520 (D.D.C.1984), the plaintiff's claim still fails. "To recover under the tort of bad faith refusal to pay, the plaintiff must show that the defendant did not have a reasonable basis for denying benefits under the policy and that it knew or recklessly disregarded its lack of a reasonable basis when it denied the claim." *Id.* at 520 (citing *Noble v. National American Life Insurance Co.,* 128 Ariz. 188, 624 P.2d 866, 868 (1981)). The plaintiff asserts that Chubb's denial or refusal to consider its claim for benefits constitutes "bad faith" conduct, but fails to allege how or why such conduct lacked a reasonable basis in light of the express terms of the Fidelity Bond insurance agreement, which provides that only the insured may collect benefits. Instead, the plaintiff would have the Court draw unreasonable inferences from what appear to be relatively straightforward facts. The Court simply cannot infer any set of facts under which a denial of benefits constitutes "bad faith" where the express language of the agreement demands that the insurance company do so. Accordingly, the Court finds that the plaintiff fails to state a claim for breaches of good faith and fair dealing against either Babb or Chubb and Count II is dismissed.

### IV. Tortious Interference (Count III)

██ Count III of the complaint alleges that Babb's conduct in allowing the Law Firm "to misappropriate the Escrow Deposit" constitutes tortious interference. A plaintiff must allege the following four elements in pleading a claim for tortious interference with a contract: (1) existence of a contract, (2) knowledge of the contract, (3) intentional procurement of its breach by the defendant, and (4) damages resulting from the breach. *Sorrells v. Garfinckel's et al.,* 565 A.2d 285, 289 (D.C. 1989) ("*Sorrells* "). Under District of Columbia law, a court considers seven factors in determining whether a defendant "intentionally" procured the alleged breach, including the nature of the defendant's conduct, his motive, the interests he seeks to advance, and the relationship of the parties.[3] *Id.* at 290. Babb moves for dis-

3. In determining whether there was intentional procurement of a breach, a court will consider the following seven factors: (1) the nature of the actor's conduct; (2) the actor's motive; (3) the interests of the other with which the actor's conduct interferes; (4) the interests sought to be advanced by the actor; (5) the social interests in protecting the freedom of action of the actor and the contractual interests of the other; (6) the proximity or remoteness of the actor's conduct to the interference; and (7) the relations of the parties. *Sorrells,* 565 A.2d at 290.

missal of this count because the plaintiff has failed to allege any facts describing the nature of the alleged tortious conduct. The most detailed allegation is that Babb "act[ed] together with" or "allow[ed]" the Law Firm to misappropriate the escrow funds, Compl. ¶¶ 20, 35, and "had a relationship" with the Law Firm. Pl. Opp. 15. The plaintiff further argues that "[t]o somehow participate in the disappearance of almost two million dollars is not crass and greedy conduct...?" *Id.*

The Court finds that the plaintiff has failed to meet even the most generous requirement of Rule 8 pleading. The plaintiff has neither alleged how Babb assisted the Law Firm nor why Babb, as an agent of Chubb, would have any relationship with the Law Firm, especially in light of its allegations that both Babb and Chubb were brought into the transaction to serve the interests of the plaintiff. Pl. Opp. 9. Accordingly, the Court finds that the plaintiff has failed to state a claim against Babb for tortious interference with a contract, and Court III is dismissed.

## V. *Punitive Damages (Count IV)*

■■■ Finally, Count IV alleges that the conduct of Babb and Chubb was "calculated...flagrant, and in disregard of their obligations of trust[,]" which justifies the imposition of punitive damages against them, in addition to compensatory damages. Punitive damages may be awarded for conduct that is "willful and outrageous, exhibits reckless disregard for the rights of others, or is aggravated by 'evil motive, actual malice, or deliberate violence or oppression.'" *Harris v. Howard University,* 28 F.Supp.2d 1, 25 (D.D.C.1998). Punitive damages are unavailable as a matter of law for pure contract actions, and thus a plaintiff must allege that a breach of contract "merges with, and assumes the character of a willful tort" to recover such damages. *Brown v. Coates,* 253 F.2d 36, 39 (D.C.Cir. 1958). As the Court has found that the

plaintiff has failed to properly state any claim in contract or tort against Babb and Chubb, much less a "willful tort," it will also dismiss the plaintiff's claim for punitive damages for failure to state a claim.

### ORDER

For the reasons set forth above, it is this 7th day of July, 2004, hereby

**ORDERED** that the defendants' motions to dismiss [# 9, 12] are GRANTED; and it is further

**ORDERED** that Counts I, II, III, and IV of the complaint are dismissed with prejudice.

**SO ORDERED.**